**In re FINE PAPER LITIGATION**
**STATE OF WASHINGTON,**
**Appellant, No. 79–2738.**

**STATE OF NEW YORK, Appellant,**
**No. 79–2739.**

United States Court of Appeals,
Third Circuit.

Argued July 9, 1980.
Decided Oct. 2, 1980.

John R. Ellis (argued), David F. Ross, Asst. Attys. Gen., Slade Gorton, Atty. Gen., Thomas L. Boeder, Senior Asst. Atty. Gen., Consumer Protection & Antitrust Division, Seattle, Wash., for appellant State of Washington.

Donald R. Holtman (argued), Marvin H. Lapuk, Kleinman, Steinberg & Lapuk, Hartford, Conn., Carl R. Ajello, Atty. Gen., State of Connecticut, Hartford, Conn., for appellee State of Connecticut at No. 79–2739.

Daniel A. Fass (argued), John M. Desiderio, Asst. Attys. Gen., Robert Abrams, Atty. Gen., Shirley Adelson Siegel, Sol. Gen., New York City, for appellant State of New York.

John J. Degnan, Atty. Gen., Laurel A. Price, Deputy Atty. Gen., Division of Criminal Justice, Antitrust Section, Princeton, N. J., for State of New Jersey as amicus curiae.

Noble K. Gregory (argued), Allan N. Littman, Terrence A. Callan, William O. Fisher, Pillsbury, Madison & Sutro, San Francisco, Cal., for appellee Potlatch Corp.

Erwin C. Heininger, Ned Robertson, Mayer, Brown & Platt, Chicago, Ill., for appellee International Paper Corp.

Robert J. Bagdasarian, Robert Ferri, Breed, Abbott & Morgan, New York City, for appellee Union Camp Corp.

Charles A. Graddick, Atty. Gen., Susan Beth Farmer, Asst. Atty. Gen., Montgomery, Ala., for State of Alabama as amicus curiae.

Richard S. Gebelein, Atty. Gen., William E. Kirk, III, Deputy Atty. Gen., Wilmington, Del., for State of Delaware as amicus curiae.

Wayne Minami, Atty. Gen., Robert F. Miller, Deputy Atty. Gen., Honolulu, Hawaii, for State of Hawaii as amicus curiae.

Steven L. Beshear, Atty. Gen., James M. Ringo, Asst. Atty. Gen., Antitrust Division, Frankfort, Ky., for Commonwealth of Kentucky as amicus curiae.

Max L. Gillam, Hugh Steven Wilson, Reed E. Hundt, Latham & Watkins, Los Angeles, Cal., for appellee Boise Cascade Corp.

H. Richard Wachtel, John S. Kinzey, LeBoeuf, Lamb, Leiby & MacRae, New York City, for appellee St. Regis Paper Co.

Stephen C. Neal, Joel G. Chefitz, Kirkland & Ellis, Chicago, Ill., for appellee Weyerhaeuser Co.

Richard H. Bryan, Atty. Gen., Willard Van Hazel, Jr., Deputy Atty. Gen., Antitrust Unit, Carson City, Nev., for State of Nevada as amicus curiae.

Alan Witten, Asst. Atty. Gen., Antitrust Section, Columbus, Ohio, for State of Ohio as amicus curiae.

Jan Eric Cartwright, Atty. Gen., Stephen F. Shanbour, Asst. Atty. Gen., Oklahoma City, Okl., for State of Oklahoma as amicus curiae.

Dennis J. Roberts, II, Atty. Gen., Patrick J. Quinlan, Sp. Asst. Atty. Gen., Antitrust Unit, Providence, R. I., for State of Rhode Island as amicus curiae.

Bill Allain, Atty. Gen., Robert E. Sanders, Sp. Asst. Atty. Gen., Jackson, Miss., for State of Mississippi as amicus curiae.

Chauncey H. Browning, Atty. Gen., Charles G. Brown, Director, Deputy Atty. Gen., Antitrust Division, Charleston, W. Va., for State of West Virginia as amicus curiae.

Daniel R. McLeod, Atty. Gen., John M. Cox, State Atty., Columbia, S. C., for State of South Carolina as amicus curiae.

Bronson C. LaFollette, Atty. Gen., Michael L. Zaleski, Asst. Atty. Gen., Antitrust & Criminal Litigation Unit, Madison, Wis., for State of Wisconsin as amicus curiae.

Before WEIS, VAN DUSEN and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

After notice of the partial settlement of consolidated class actions, one putative class member objected because the class representative had not requested certification of the class specified in the complaint. The district court rejected the objections to the settlement and dismissed the settling defendants. We remand so that the court may rule on the status of the class as defined in the complaint and entertain a motion by the putative class member to intervene. In another phase of the litigation, a partial assignee of some of the claims presented by a class sought to opt out of the settlement. The district court refused to allow the assigned claims to be withdrawn. We remand so that the district court may consider joinder of the partial assignee as an additional class member.

The opinion will treat the appeals separately.

### I

### THE NEW YORK APPEAL

On July 29, 1977, the State of Connecticut filed a complaint in the United States District Court for the District of Connecticut alleging that defendant manufacturers had violated the antitrust laws in connection with the sale and distribution of fine paper. The suit was brought as a class action in which Connecticut purported to represent "all state and local governmental purchasers of fine paper in the United States." Suits also were brought in other federal district courts by various distributors and other purchasers, including a number of states. Before any motions for class certification were ruled on by the Connecticut district court, the Judicial Panel on Multi-District Litigation ordered that 15 fine paper actions pending in eight federal districts be consolidated for pretrial proceedings in the Eastern District of Pennsylvania. *In re Fine Paper Antitrust Litigation*, 446 F.Supp. 759 (J.P.M.D.L.1978) (per curiam).

In one of the first orders issued by the transferee court, the plaintiffs were given the opportunity to file amended complaints. Connecticut did so on May 12, 1978, and again purported to represent a national class of governmental entities. Six days later, the state moved for certification of a class consisting only of itself and governmental units within its borders. Four other states–Illinois, Kansas, Minnesota, and

South Dakota (collectively with Connecticut the "minority states")–asked for similar class certifications in separate suits they had filed. In addition, 15 states (the "majority states") sought class certification for intrastate governmental units on complaints alleging the existence of antitrust conspiracies among the paper producers and various distributors. On February 16, 1979, the district court granted the certifications requested by Connecticut and the other four minority states, but refused to certify classes requested by the majority states because of a lack of commonality. There was no ruling on the national class originally requested by Connecticut.

On March 5, 1979, the plaintiff merchant houses, distributors of paper produced by the manufacturers, representing a nongovernmental national class, and the five minority states representing statewide classes, moved for preliminary approval of a proposed settlement agreement with six of the defendants.[1] The proposed settlement was to include the five state classes and "such other statewide governmental entity classes" that might elect to participate in the settlement by agreement of the settling parties. Two states with pending suits decided to become parties to the settlement, and three others filed suit so they, too, could join in the agreements.

On May 11, 1979, the district court tentatively approved the proposed settlement. In its order, the court decreed that notice be sent to members of the settling classes by July 1, 1979, and any request for exclusion from the class was to be postmarked no later than August 16, 1979. A hearing was scheduled for September 10, 1979, to entertain objections to the proposed settlements.

The State of New York had not filed suit and, on August 2, 1979, formally objected to the settlement. Alleging that it had relied upon the assertion in the complaint of a national governmental class, New York contended that Connecticut had compromised that class by its failure to move for certification and its subsequent participation in the settlement. New York argued that the court should not approve the settlement unless and until steps were taken by Connecticut to include the national governmental class in the agreement. As New York saw it, Connecticut had violated a fiduciary duty to the putative members by failing to seek certification of the national class described in the complaint.

The district court held that since it was not part of any certified class that joined in the settlement, New York had no standing to object. Moreover, the court could discern no prejudice to New York since none of its rights would be compromised by the settlement–not being a member of any certified class, New York would be free to file a separate action. In this context, the court reasoned that under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the statute of limitations would be tolled, at the very least, through the date of the court's class certification order, February 16, 1979. Declining to treat New York's objections as a bar to the settlement, the court approved it and dismissed the settling defendants from the case.

On appeal, New York contends that, since it was a putative member of the class that Connecticut initially purported to represent, it has standing to contest the settlement. New York's objections focus on the allegedly deficient procedures employed by the district court in permitting Connecticut to settle its claim without probing that state's apparent abandonment of the nationwide class. Specifically, New York asserts that notice under Fed.R.Civ.P. 23(e)[2] should have been given to members of the nascent national class.

---

1. The settlement is actually three separate agreements, but each contains substantially similar terms.

2. Rule 23(e) provides:

"A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

Connecticut challenges New York's characterization of its standing, contending that the latter occupies the position of any other nonparty that objects to a settlement. As to the crux of New York's objections—the challenge to the procedures utilized by the district court—Connecticut asserts that the circumstances existing in the precertification stage of this case made notice of the settlement and dismissal unnecessary.

An assessment of the district court's rejection of New York's challenge requires a brief review of the background. Connecticut filed its complaint in 1977. By the time the statewide class was certified some two years later, there had been a number of suits filed by other states on their own behalf and on behalf of other governmental entities. These suits, moreover, asserted other, more complex theories of liability, and it was the lack of commonality, as we read the record, that led the district court to deny certification to the majority states.

It would appear that the number of governmental suits, with their divergent theories, substantially weakened Connecticut's bid to be the representative of a national class. From this perspective, it could be argued that a district court decision to certify Connecticut and the other minority states as separate, small classes would be sustainable. Moreover, in these circumstances, the court might have been justified in refusing to certify a national class. Realistically, New York could have hoped for little more than a class consisting of Connecticut and some, but not all, of the other states.

We gather that New York is apparently not as anxious to be part of a truly national class as it is to be a member of some class that includes Connecticut. Seemingly, New York believes that Connecticut has the necessary information to prosecute this antitrust case successfully and, without that information, recovery is doubtful.[3]

In any event, with this background information in place, we must confront the question of New York's standing to present its

objections. Concededly, the situation here is different from previous standing cases decided by this court, where the party objecting to the settlement had concrete links to some identifiable class. *See, e. g., In re Pittsburgh and Lake Erie Railroad Securities and Antitrust Litigation*, 543 F.2d 1058 (3d Cir. 1976); *Greenfield v. Villager Industries, Inc.*, 483 F.2d 824 (3d Cir. 1973). New York argues that once Connecticut filed its complaint as a class representative, it owed a duty to represent the interests of the putative members. Essentially, New York espouses the theory that even before a case is certified, the putative class representative becomes one in fact and may not voluntarily withdraw from that responsibility without consent of the class or approval of the court, and further, that New York may, at this time, take steps to correct any defects in the representation.

■ This case is one brought under Rule 23(b)(3), and, as such, Rule 23(c) requires that as soon as practicable after commencement of the suit the court is to determine whether. the case shall be maintained as a class action. After an affirmative determination is made, the class representative acts as a fiduciary. *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). The judgment binds members of the class, and the suit may not be settled without the approval of the court, *Sosna v. Iowa*, 419 U.S. 393, 399 n.8, 95 S.Ct. 553, 557, n.8, 42 L.Ed.2d 532 (1975), or without notice to absent class members, Fed.R.Civ.P. 23(e). Certification is therefore a significant step in the litigation, one that establishes certain rights and obligations of class members and representatives.

The duty of the putative class representative before certification is not spelled out in the rule, but decisional law is slowly beginning to clarify the situation. The filing of a class action complaint marks the beginning of what might be termed a twilight zone that terminates with the certification order. In a sense, the complaint may be considered akin to an offer by the named

---

3. There is substantial controversy over whether Connecticut did furnish adequate information to New York and other states at conferences among their officials.

plaintiff to act as a representative for the members of the class, which offer may be accepted by the court in a certification order. Until that order is filed, the members of the class are not bound by any judgment and the responsibilities of the person who has offered to be a class representative attain a level somewhat below that of the usual fiduciary.

■ In that interim period, unnamed class members do have certain interests in the lawsuit. They may challenge the adequacy of representation by the plaintiff, *see Knuth v. Erie–Crawford Dairy Cooperative Association*, 395 F.2d 420 (3d Cir. 1968); in some circumstances, they may have a right to be informed of, or be included in, a settlement, *Shelton v. Pargo, Inc.*, 582 F.2d 1298 (4th Cir. 1978); *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 42 F.R.D. 324 (E.D.Pa.1967); *see Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d Cir.), *cert. denied*, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); and, perhaps most importantly, the statute of limitations may be tolled during the period, *American Pipe & Construction Co. v. Utah, supra; see Susman v. Lincoln American Corp.*, 587 F.2d 866 (7th Cir. 1978), *cert. denied*, 445 U.S. 942, 100 S.Ct. 1336, 63 L.Ed.2d 775 (1980).

New York's situation, however, is somewhat different and falls into an even deeper twilight zone. Although a putative member of a national class when the complaint was filed, New York and other states were not included when Connecticut asked for, and was granted, authority to represent a much smaller class. It is important to note that the district court did not explicitly deny certification of the national class, nor has it ruled on any smaller class within that category that would include New York and other states. All that has been accomplished is a carving out of a small class consisting of Connecticut and the political subdivisions within its borders. At the time the certification motion was presented, the district judge was not advised that Connecticut had originally asked to represent a larger class, nor was he asked to rule on the status of the excluded putative class members.

■ On this record New York has demonstrated no facts justifying an exception to the general rule that a nonsettling party may not object to the terms of a settlement which do not affect its own rights. *See Weight Watchers of Philadelphia, Inc. v. Weight Watchers International, Inc.*, 455 F.2d 770 (2d Cir. 1972). Moreover, New York can show no prejudice from the lack of notice. It was aware of the fact that settlement negotiations were underway and learned of the agreement soon after it had been reached.

In these circumstances, notice would have been, at best, superfluous. Consequently, we need not address the broad question whether notice under Rule 23(e) is ever mandatory in the precertification stage. *See Shelton v. Pargo, Inc., supra.*[4] Nor do we meet the question whether the district court in its discretion might order notice and an appropriate opportunity to intervene where possible bad faith in the redefinition of the class appears to be an integral part of settlement negotiations. Indeed, the assertion of New York and the amici, several other excluded states, that Rule 23(e) notice is required tends to obscure their principal concern, which is the challenge to Connecticut's representation as it affects the current status of the national class.

■ Evaluating New York's objections as they relate to the status of the national class requires more discussion. As the record now stands, the suit brought by Connecticut as a national class action has resulted in the certification of a small limited class that has reached a settlement with some of the defendants. One of the terms of the agreement is the complete dismissal of the settling defendants from the case, and the district court has entered such an

---

4. *Compare* Wheeler, Predismissal Notice and Statutes of Limitations In Federal Class Actions After *American Pipe & Construction Co. v. Utah*, 48 S.Cal.L.Rev. 771 (1975) *with* Comment, Notice of Prejudgment Settlements in Class Action Litigation, 73 NW.U.L.Rev. 909 (1978).

,order. The court's action, however, has left New York and the amici states' claims in suspended animation. These states are putative members of a national class asserting entitlement to damages from defendants dismissed from the case but are without a ruling stating whether certification is to be allowed or denied. Until such time as certification of the national class excepting Connecticut and its internal government entities has been denied, an order dismissing the settling defendants from the case is premature. The claims of New York and the other putative members of the national class may not be overlooked.

█ Although it appears likely that Connecticut will no longer wish to represent the national class, the settlement does not automatically terminate that state's status as a putative class representative. *See United States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). This gives some support to New York's contention that Connecticut should continue as the representative of a larger class.

█ The problem is that the issues of certification of a national or smaller class and designation of a class representative never were properly brought to the attention of the district court. New York obliquely attacked the issues by its objections to Connecticut's settlement but never intervened in order to bring the status of the limboed class before the court. New York's status as a putative class member is not enough to give it standing here, and intervention should have been sought under Fed.R.Civ.P. 24. *See American Pipe & Construction Co. v. Utah, supra.*

Intervention has been used to obtain appellate review of certification decisions.

*See Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 332 n.5, 100 S.Ct. 1166, 1171, n.5, 63 L.Ed.2d 427 (1980); *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed. 423 (1977). Only after intervention has been granted may New York properly present its contention that Connecticut should continue to represent a class comprised of more states than simply itself, or, in the alternative, that as the self–appointed representative of the class, Connecticut owes a duty to a successor representative to divulge evidence that it would have used in presenting the class claim against the defendants.

Because the matter must be remanded to the district court to resolve the status of the national class before entry of a dismissal order, we are not inclined to preclude New York from remedying its procedural posture by petitioning for intervention. At that stage, the other parties to the suit may present their contention that New York had unduly delayed its protest about the class representative. We express no view on the merits of that point or other issues which have been raised by New York.[5]

It follows that the order dismissing the settling defendants from the suit must be vacated since no disposition has been made of the claims of the putative national governmental class members. On remand, New York or others similarly situated will be free to petition for intervention in order to present their contentions as to class representation and composition.

## II

### THE WASHINGTON APPEAL[6]

The Washington appeal is intertwined with the claims of a class composed of merchant houses that purchased fine paper

---

5. In *United Airlines, Inc. v. McDonald, supra* at 394 n.15, 97 S.Ct. at 2470 n.15, the Court expressed concern over premature motions to intervene at a time when the effect would be to make the intervenor a "superfluous spectator." Absent concern over tolling of the statute of limitations, *see American Pipe & Construction Co. v. Utah, supra*, premature and possibly unnecessary interventions should not be encouraged.

Nor do we address the district court's decision denying New York's motion to serve special interrogatories on Connecticut.

6. Only those facts not mentioned in the previous section and relevant to the Washington appeal will be provided here.

from the defendant mills. Alleging a conspiracy to fix prices, as well as to stifle interbrand and intrabrand competition under the Sherman Act, various merchant houses sought treble damages. They were included in the certification of the direct purchaser class, which joined in the settlement with the minority state classes and the six settling defendants.

Washington entered into the litigation on June 19, 1978, when it filed its complaint alleging various horizontal and vertical conspiracies by firms in the fine paper industry. Named as defendants were the paper producers and the merchant houses. Washington sought relief on behalf of a class consisting of intrastate instrumentalities, but this class was one of the majority state actions denied certification.

In response to the district court's request for exclusion from the settlement, Washington sent a "Notice of Exclusion of Claims from Class Action and Proposed Settlements," also described in the margin as "Notice of Opt–Out," by express mail on August 15, 1979. In the notice, Washington asserted that certain merchant houses that were members of the direct purchaser class had executed assignments of antitrust claims to the state. These assignments were made at the time of, and in connection with, sales of paper to Washington and stated: "Vendor and Purchaser recognize that in actual economic practice overcharges resulting from antitrust violations are in fact borne by Purchaser. Therefore, Vendor hereby assigns to Purchaser any and all claims for such overcharges."

At the hearing on September 10, 1979, Washington stated that it intended to amend its complaint to include the claims assigned by the merchant houses, and submitted the proposed amendment to the court a few days later. The settling defendants objected to Washington's effort to opt–out, asserting that the assignments were invalid attempts to split a cause of action.

On October 2, 1979, the district court filed a memorandum and order approving the settlements and ruling that Washington's

objections were untimely, and, in any event, the state's assertion of the assigned claims would result in an impermissible fragmentation of the merchant house causes of action. The court buttressed its conclusion by referring to the Supreme Court's decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), which holds that indirect plaintiffs cannot sue under the federal antitrust laws. In the district court's view, permitting Washington to maintain a separate action on the partial assignments would essentially circumvent the Court's decision. Accordingly, the court denied Washington's motion to amend its complaint.

On appeal, Washington challenges the district court's conclusion that the opt–out was untimely. It also asserts that the court erred in ruling that suits to enforce claims on the partial assignments constitute an impermissible splitting of the cause of action. Washington argues that the splitting theory has no relevance when all matters are to be decided in the same proceeding. Consistent with this position, Washington contests the applicability of *Illinois Brick* to the partial assignment scenario, asserting that consideration of the assignments does not add to the complexity of the litigation. Finally, the state raises a due process contention about the procedures the district court utilized in hearing and ruling on its objections. The settling defendants argue that each merchant house has but one cause of action for damages against the defendants and that while the claim may be based on a purchase of goods ultimately sold to many customers, there is nevertheless but one claim of the merchant houses arising out of the transactions with each mill.

■ We first meet the timeliness issue. The district court ruled that the request for exclusion by Washington was not timely and did not "comport with the established opt–out procedure," but the record does not support this conclusion. The notice of exclusion was postmarked August 15, 1979, one day before the deadline set by the district court. Moreover, it is denominated a "notice of opt–out" and goes on to de-

scribe the peculiar position Washington occupies in this litigation. We therefore conclude that Washington properly brought the matter before the district court.

It may be that the district court's ruling was prompted by the unique position in which Washington found itself. It purported to exclude itself from the settling class, yet from the state's vantage point, it did not fall within that class. There is substance to the fear, however, that the settlement will include claims allegedly held by Washington via assignment. It is necessary, therefore, to consider the validity of the assignments, and what steps are necessary to protect the rights of all the parties to this litigation.

■ Although the common law did not favor the assignment of causes of action, by and large that attitude has been overcome. In any event, the status of assignments under the Sherman and Clayton Acts is a matter of federal law, and, in this connection, a number of cases have assumed that such assignments are valid. *E. g., D'Ippolito v. Cities Service Co.*, 374 F.2d 643, 647 (2d Cir. 1967); *Hicks v. Bekins Moving & Storage Co.*, 87 F.2d 583, 585 (9th Cir. 1937); *Mercu–Rey Industries, Inc. v. Bristol–Myers Co.*, 392 F.Supp. 16, 18 (S.D.N.Y.), *aff'd mem.*, 508 F.2d 837 (2d Cir. 1974). Facially, then, there appears to be no obstacle to the validity of the assignments and had the merchant houses assigned all of their claims to Washington, presumably the issue in this case would not have arisen. But because only some of the accounts were assigned–the transactions with Washington–the district court felt compelled to deny the state's request.

One problem with the partial assignments, in the district court's view, was a clash with the Court's decision in *Illinois Brick*. In our judgment, however, the partial assignments pose no threat to the rule of law enunciated in that case. The Supreme Court identified two reasons for the rejection of the offensive use of the pass–on theory in antitrust cases. First, it expressed the fear that suits by indirect purchasers would increase the risk of multiple liability to the defendants. 431 U.S. at 730–31, 97 S.Ct. at 2066–2067. Second, the Court reasoned that such suits would spawn insurmountable problems of proof and procedure in typical antitrust cases. *Id.* at 737–41, 97 S.Ct. at 2070–72.

We believe that these reasons argue for recognition of the assignments here. Adjudicating the partial assignments at this stage will provide defendants with assurance against multiple liability. With all the claims in one proceeding, as we permit the defendants to achieve (see *infra* p. 1091), the parties and the court can monitor each claim against the defendants. Moreover, the presence of the partial assignments will not add to the complexity of the lawsuit. Proof of the assignment bears no resemblance to attempts to ascertain the numbers of indirect purchases or overcharges in the *Illinois Brick* setting. The dangers of nonjoinder expressed by the Supreme Court, are not, as we explain later, present here. Accordingly, we find no conflict with the philosophy of *Illinois Brick*.

■ We also reject the defendant's position that the partial assignments improperly fragment the claim. In fact, we view this reason as basically inapposite to the issue at hand. The splitting of a cause of action principle is important in the application of res judicata. That doctrine teaches that a valid judgment on the merits is a bar in another action between the same parties or privies not only in respect to matters that were actually offered to support the judgment but also as to every ground that might have been presented. 1B Moore's Federal Practice ¶ 0.410[2] (2d ed. 1974). The earlier judgment, however, must be invoked as an affirmative defense in the second action, see Fed.R.Civ.P. 8(c), and is waivable by the defendant. Moreover, to have res judicata effect the initial judgment must be on the merits.

■ Given these precepts, the settling defendants could not properly invoke the splitting of a cause of action theory to prevent Washington from opting out of the first suit. That plea was premature and, in

addition, the judgment in the first suit would have been based on settlement rather than on the merits. Finally, we note that the settlement would have taken place after the defendants were aware of the assignments. When the obligor has notice of an assignment by the plaintiff—and the assignee is not joined—a judgment for or against the obligor will not bar a later suit by the assignee. Restatement (Second) of Judgments § 104 (Tent. Draft No. 3, 1976).

■ Although the theory of splitting a cause of action is somewhat analogous to the present situation, we think the sounder approach to this problem is to analyze the relationship between the parties when a partial assignment of claims is outstanding. The general law applicable is in accord with that found in § 156 of the Restatement of Contracts. An assignment of a fractional part of a single and entire right against an obligor is operative as if the part had been a separate right. But unless the obligor has consented, the partial assignee may not maintain the original suit against the obligor unless all parties having the collective right to the entire claim are joined in the proceeding. *See* Restatement (Second) of Contracts § 158 (Tent. Draft No. 3, 1976); 4 A. Corbin, Contracts § 889 (1951). Thus, partial assignments are recognized, but the rights of the obligor to be free of successive and repeated suits growing out of the same basic facts are also protected by the prudent use of joinder rules.

■ If a suit is brought by either an assignor or partial assignee, the obligor has the option of requiring joinder of the necessary parties or resorting to interpleader. Fed.R.Civ.P. 19, 22; *see Yorkshire Insurance Co. v. United States*, 171 F.2d 374, 376 (3d Cir. 1948), *aff'd sub nom. United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949). The fact that the litigation is in the form of a class action rather than an ordinary suit does not impair the obligor's right to insist upon joinder of all interested parties. Indeed, the prime purpose of Rule 23—the avoidance of multiple actions—strengthens the reason for application of joinder here.

■ The membership of the direct purchaser class is designated as "all persons, other than governmental entities . . . which purchased from any defendant . . . fine paper." Thus, although Washington is not included within the class, its assigned claims are, by definition, identical to those of that class. With respect to the claims to which it holds partial assignments, Washington can be made a party but, unlike other class members, will not have the right to opt out. The compulsory joinder provisions of Rule 19 and the necessity to give protection to the obligors from additional litigation from partial assignees require such a result.

There is no doubt that permitting Washington to assert its claims in a separate action would protect whatever rights it holds. The difficulty with that approach is that the settling defendants may well be uncertain as to their potential liability to Washington by settling with the merchant houses after having received notice of the outstanding assignments. The district court, by denying Washington's attack, took the other extreme. But we think that the substance of what the district court wished to achieve can be better accomplished either by the joinder of Washington under Rule 19 as an involuntary class member or its interpleader by the settling defendants. Because the addition of the partial assignee as a co-party is a course available to the defendants at their option, we will remand the case to the district court where the matter may be presented to the trial judge for appropriate action.[7]

## III

The order dismissing New York's objections and dismissing the suit against the

---

7. Because of our holding, we need not address Washington's contention that the district court erred in denying its motion to amend, and, indeed, whether such an order is even reviewable.

We also find that Washington did have an adequate opportunity to present its position in the district court and was not denied due process.

settling defendants is vacated and the matter is remanded to the district court for further proceedings consistent with this opinion.

The order dismissing the State of Washington's objections is vacated and the case is remanded to the district court for further proceedings consistent with this opinion.