921 F.2d 1330
 21 Fed.R.Serv.3d 1196, 65 Ed. Law Rep. 32
 In re SCHOOL ASBESTOS LITIGATION.
SCHOOL DISTRICT OF LANCASTER, Manheim Township School
District, Lampeter-Strasburg School District and
Northeastern School District, Appellees,
v.
LAKE ASBESTOS OF QUEBEC, LTD., the Celotex Corporation,
Raymark Industries, Inc., Union Carbide Corp., Asbestospray
Corp., Sprayo-Flake Company, National Gypsum Co., Sprayed
Insulation, Inc., Asbestos Fibres Inc., Dana Corporation,
U.S. Gypsum, U.S. Mineral Products Company, Sprayon
Insulation & Acoustics, Inc., Sprayon Research Corp., Keene
Corp., Worben Co., Inc., Wilkin Insulation Company, W.R.
Grace & Co., Owens-Corning Fiberglas Corporation, Standard
Insulation, Inc., North American Asbestos Corporation,
Cassiar Resources Ltd., Bell Asbestos Mines, Ltd., Asbestos
Corporation Limited, Southern Textile Corp., Owens-Illinois,
Inc., Turner & Newall Limited, the Flintkote Co., Fibreboard
Corporation, GAF Corp., Uniroyal, Inc., Cape Asbestos,
Pfizer, Inc., Kaiser Cement Corporation, Bes-Tex, Inc.,
Georgia-Pacific Corp.
Appeal of KAISER CEMENT CORPORATION, in No. 90-1247.
Appeal of UNITED STATES GYPSUM COMPANY, in No. 90-1248.
 Nos. 90-1247, 90-1248.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 19, 1990.
Decided Dec. 13, 1990.
Rehearing and Rehearing In Banc in No. 90-1247 Denied Jan. 9, 1991.
 
 Thomas Kirby (argued), Wiley, Rein & Fielding, Washington, D.C., for appellants.
 John H. Lewis, Jr., Joseph B.G. Fay, J. Gordon Cooney, Jr., Andrew D. Leipold, Richard H. McAdams, Morgan, Lewis & Bockius, Philadelphia, Pa., for appellant, U.S. Gypsum Co.
 
 
 1
 Daniel J. Ryan, Jr., Marshall, Dennehey, Warner, Coleman & Coggin, Philadelphia, Pa., Patrick J. Hagan, Kincaid, Gianunzio, Caudle & Hubert, Oakland, Cal., for appellant, Kaiser Cement Corp.
 
 
 2
 Herbert B. Newberg, Harvey S. Kronfeld, Gerald E. Wallerstein, Sandra L. Duggan, Herbert B. Newberg, P.C., David Berger (argued), Harold Berger, Warren Mulloy, Howard Langer, Thomas F. Hughes, David Berger Attorneys at Law, Philadelphia, Pa., for appellees, School Dist. of Lancaster, Manheim Tp. School Dist., Bd. of Educ. of the Memphis City Schools Barnwell School Dist.
 
 
 3
 Molly S. Boast (argued), Jay G. Safer, Frederick B. Lacey, LeBoeuf, Lamb, Leiby & Macrae, New York City, Edward W. Madeira, Jr., Richard W. Foltz, Jr., Matthew H. Adler, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellee, Lake Asbestos Quebec.
 
 
 4
 Charles Alan Wright, Austin, Tex., of counsel to appellees.
 
 
 5
 Before SCIRICA, COWEN and ALDISERT, Circuit Judges.
 
 OPINION OF THE COURT
 
 6
 ALDISERT, Circuit Judge.
 
 
 7
 Here we are confronted with an appeal by two non-settling defendants in a nationwide class action asbestos action who unsuccessfully contested a settlement agreement entered into by another defendant in the district court. We conclude that these non-settling defendants lack standing to challenge the agreement. Accordingly, we affirm the judgment of the district court.
 
 I.
 
 8
 In 1984, the district court certified a nationwide opt-out class of school districts seeking to recover from approximately fifty defendants. Three defendants made offers to settle: Owens-Illinois, Inc., Proko Industries, and Lake Asbestos of Quebec, Ltd. ("LAQ"). The district court approved the OI/Proko settlement, over objections by certain defendants. The court ruled that such non-settling defendants lacked standing to object to a settlement with a co-defendant.
 
 
 9
 On November 27, 1989, the district court preliminarily approved a one million dollar settlement with LAQ; it also approved a corresponding form of notice submitted by the class plaintiffs, directing notice to be sent by first class mail. The district court concluded that the settlement with LAQ was fair, reasonable, adequate, and proper, and entered final judgment on the settlement as to the class defined in the settlement agreement. Two non-settling defendants, Kaiser Cement and United States Gypsum, appeal the LAQ settlement agreement.
 
 
 10
 In the underlying litigation a question was raised as to jurisdiction. We determined in In re School Asbestos Litig., 921 F.2d 1310 (3d Cir.1990) (filed on this date) that the defendant petitioners had not met their burden of showing a "clear and indisputable lack of subject matter jurisdiction in the district court." Thus, jurisdiction in the trial court was proper based on 28 U.S.C. Sec. 1332. Jurisdiction on appeal is proper based on 28 U.S.C. Sec. 1291. Appeal was timely filed under F.R.A.P. 4(a).
 
 
 11
 Review of the essentially legal question of standing is plenary. PIRG of New Jersey v. E.P.A., 913 F.2d 64 (3d Cir.1990).
 
 II.
 
 12
 The district court held that Kaiser and United States Gypsum lacked standing to contest the LAQ agreement:
 
 
 13
 As a general rule, a non-settling defendant is not prejudiced by the settlement and therefore has no standing to contest the settlement. In re Beef Industry Antitrust Litigation, 607 F.2d 167 (5th Cir.1979). There are, however, two recognized exceptions to this general rule. A non-settling defendant can object to a settlement: 1) when the terms of the settlement preclude the non-settling defendant from seeking indemnification from the settling defendant, and 2) when the settlement affects the rights of the non-settling defendant. In re Beef Industry Antitrust Litigation, 607 F.2d 167 (5th Cir.1979); In re Fine Paper Litigation, 632 F.2d 1081 (3d Cir.1980).
 
 
 14
 Pretrial Order No. 66; Appellees' Brief at 7. The court recognized the general exception to the rule denying standing when "non-settling defendants are precluded from seeking indemnification from settling defendants" and rejected appellant Kaiser Cement's claim that its right to indemnification or contribution was compromised. Memorandum and Order of February 16, 1990 at 6; App. at 809, 1990 WL 18761.
 
 III.
 
 15
 Kaiser and U.S. Gypsum argue on appeal that their rights are not adequately protected by the settlement agreement and that they have standing to raise issues arising from the LAQ settlement. Basically, their argument is that the settlement agreement bars them from pursuing claims for contribution or indemnity against LAQ. See Brief for Kaiser Cement Corp. at 37-43; Brief for U.S. Gypsum at 14-20. They contend that their dismissal by the district court leaves them out in the cold, unable to test subject matter jurisdiction and the adequacy of the procedures leading to final judgment. They argue that they should be given the opportunity to assert these claims in order to preserve their rights to contribution or to establish judgment reduction rights against class members in this or subsequent litigation.
 
 
 16
 The appellees counter that these protestations are without merit. They argue that appellants have failed to demonstrate legal prejudice that might give them standing to contest the LAQ settlement and, lacking this, their "lost opportunity" argument cannot be asserted and their appeal should be dismissed.
 
 
 17
 It is clear that the appellants bear the burden of demonstrating that they have standing. See e.g., Ass'n of Data Processing Serv. Org., Inc. v. Camp, 397 U.S. 150, 154, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970); Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1961). To establish standing to appeal a settlement, a non-settling defendant may not merely claim an interest in the lawsuit but must show some cognizable prejudice to a legal relationship between it and the settling parties. In re Fine Paper Litig. State of Wash., 632 F.2d 1081, 1087 (3d Cir.1980) (non-settling party may not object to settlement terms that do not affect its own rights); Utility Contractor's Ass'n of New Jersey v. Toops, 507 F.2d 83, 85 (3d Cir.1975) (non-settling parties have no standing to object to partial settlement where they demonstrated no interference with any legal relationship between them and the settling parties); see also Waller v. Financial Corp. of Am., 828 F.2d 579, 583 (9th Cir.1987); Quad/Graphics, Inc. v. Fass, 724 F.2d 1230 (7th Cir.1983); In re Viatron Computer Sys. Corp. Litig., 614 F.2d 11 (1st Cir.), cert. denied, 449 U.S. 826, 101 S.Ct. 90, 66 L.Ed.2d 30 (1980); In re Beef Industry Antitrust Litig., 607 F.2d 167, 172 (5th Cir.1979), cert. denied, 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981). The appellants assert that standing is established because their rights to contribution or indemnity are compromised by the LAQ settlement. We disagree.
 
 IV.
 
 18
 The agreement with LAQ specifically provides that, in the event any defendant obtains a judgment against LAQ for contribution or indemnification, any judgment obtained by the class against such defendant will be reduced by any "amount percentage or share of such judgment attributable to LAQ.":
 
 
 19
 The Class shall reduce any judgment it obtains against any defendant by the amount, percentage or share of such judgment attributable to LAQ so as to bar, discharge and release under applicable law any claims for contribution or indemnity against LAQ arising from or related to the Claims. In the event that the Class obtains a judgment (including pursuant to a settlement agreement) against one or more of those defendants, obtains a judgment over, in whole or in part, against one or more of those defendants in the Litigation and any of those defendants obtains a judgment over, in whole or in part, against LAQ for contribution or indemnity, then the Class will be required to reduce or remit any judgment or portion thereof obtained from those defendants by the amount of the judgment over against LAQ.
 
 
 20
 Paragraph 12 of Settlement Agreement; App. at 178. In his text on class actions, Herbert B. Newberg, counsel for plaintiff-appellees here, examined this scenario and concluded:
 
 
 21
 When a class settlement agreement includes a provision that future contribution judgments will be handled according to applicable law or, in the absence of statute, by a reduction in the judgment against non-settling defendants, such a settlement provision expressly recognizes potential contribution rights of non-settling parties, and does not strip them of any rights of contribution or indemnity. Under these circumstances, non-settling defendants do not gain standing to challenge a settlement by another defendant in multi-party litigation, based on grounds that their contribution or indemnity rights are being affected by the proposed settlement. See Sec. 12.42A.
 
 
 22
 2 Newberg on Class Actions Sec. 11.54 n. 472 (2d ed. 1990 Pocket Part at 103). We accept these reasons and find them consistent with our policy of encouraging settlement of complex litigation that otherwise could linger for years. See also Waller v. Financial Corp. of Am., 828 F.2d 579 (9th Cir.1987); In re Beef Industry Antitrust Litig., 607 F.2d 167 (5th Cir.1979).
 
 
 23
 The settlement agreement in this case specifically recognizes the existence of indemnification and contribution rights of non-settling defendants and the Order approving the settlement contains no ruling purporting to limit any claims non-settling defendants may have. Accordingly, appellants lack standing, We, therefore, do not reach the issue of whether adequate procedures were followed in the settlement approval process. See In re Beef Industry Antitrust Litig., 607 F.2d at 172.
 
 V.
 
 24
 The judgment of the district court will be affirmed.
 
 
 25
 COWEN, Circuit Judge, dissenting.
 
 
 26
 This appeal arises from a final judgment entered pursuant to a partial settlement agreement between one class action defendant and the plaintiff class under Fed.R.Civ.P. 23(c)(3) and Fed.R.Civ.P. 54(b) in three consolidated class actions filed in the United States District Court for the Eastern District of Pennsylvania. The final order dismisses with prejudice the claims of all class members against defendant Lac D'Amiante Du Quebec, Ltee ("LAQ"). It also purports to bind members of the plaintiff class to "adjust any subsequent recovery from non-settling defendants by any portion of the recovery attributable to LAQ." App. at 804.
 
 
 27
 Kaiser Cement Corporation and United States Gypsum Company (the "non-settling defendants") object to the settlement arguing that it prejudices the rights of non-settling defendants. The district court disagreed and held that their rights are not prejudiced and that the non-settling defendants lack standing to challenge the adequacy and fairness of the settlement. The majority opinion affirms. Because I believe that the district court lacks jurisdiction over these consolidated Rule 23(b)(3) class action cases and that the settlement prejudices the rights of non-settling defendants, I respectfully dissent.
 
 I.
 
 28
 For the reasons set forth in my dissent in In re School Asbestos Litig., 921 F.2d 1310 (3d Cir.1990) (Cowen, J., dissenting) (filed on this date), I believe that the district court lacks subject matter jurisdiction in the underlying litigation. Accordingly, I would remand to the district court to vacate the judgment of the district court and dismiss the case.
 
 
 29
 Even if the district court did have jurisdiction, it would nevertheless be inappropriate to enter final judgment with respect to LAQ because the district court has not yet determined the identity of the plaintiff class.
 
 A.
 
 30
 Rule 23(c)(3) requires that a final judgment in a Rule 23(b)(3) class action "include and specify or describe" those whom the court finds to be members of the class.[1] The district court has not yet determined which plaintiffs are actually part of this nation-wide class action suit, because all parties acknowledge that some members of the plaintiff class have claims for less than the minimum amount in controversy required by former 28 U.S.C.A. Sec. 1332(a).
 
 
 31
 Zahn v. International Paper Co., 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973) requires that "[e]ach plaintiff in a Rule 23(b)(3) class action ... satisfy the jurisdictional amount, and any plaintiff who does not must be dismissed from the case...." In order to avoid dismissing the entire class action now, as Zahn requires, the district court has vowed in Pre-Trial Order No. 197 to "cure" the jurisdictional deficiencies after trial by entering final judgment only on behalf of plaintiffs who have proven claims meeting the jurisdictional minimum. App. at 542-543.
 
 
 32
 As I discuss in my dissent in In re School Asbestos Litig., 921 F.2d 1310 (Cowen, J., dissenting) (filed on this date), this approach is flawed. Nevertheless, the majority in that case allows the district court to proceed to the merits without first curing the acknowledged jurisdictional defects. Id., at 1314-1317. Therefore, the subject matter jurisdiction of the district court, if it exists at all, is predicated on Pre-Trial Order No. 197, indicating that the district court will not enter final judgment with respect to any plaintiff who fails to establish a jurisdictionally sufficient claim. App. at 542-543. In other words, the identity of the plaintiff class will not be determined until a damages-stage trial. That is precisely why the district court may not enter a final judgment against LAQ now: the entry of final judgment with respect to a class action defendant before determining the identity of the plaintiff class violates the plain language of Rule 23(c)(3) which requires that the judgment "include and specify or describe" those whom the court finds to be members of the class.
 
 B.
 
 33
 Even if Rule 23(c)(3) did not require that the court identify the members of the plaintiff class before the entry of final judgment, precedent mandates that the district court resolve questions as to its jurisdiction before the entry of final judgment. See Employers Ins. of Wausau v. Crown Cork & Seal Co., 905 F.2d 42, 45 (3d Cir.1990) ("[A] federal court is bound to consider its own jurisdiction preliminary to consideration of the merits.") (citations omitted); Pacific Intermountain Express Co. v. Hawaii Plastics Corp., 528 F.2d 911, 912 (3d Cir.1976) (per curiam) ("a district court is not permitted to dispose of a case against a party on non-jurisdictional grounds until it first determines it has jurisdiction over such party.")
 
 
 34
 Both Wausau and Hawaii Plastics involved declaratory judgment actions where the district courts disposed of the cases as an exercise of discretion under the Declaratory Judgment Act before they resolved the pending challenges to the district courts' jurisdiction. In both cases we reversed.
 
 
 35
 In Wausau, we explained that disposition of a case "amounts to the exercise ... of dominion over [the] matter, clearly presupposing ... subject matter jurisdiction in the first instance. Wausau, 905 F.2d at 45. Likewise, in Hawaii Plastics (where both the court's personal and subject matter jurisdiction were challenged), we held that a court may not dismiss a case on non-jurisdictional grounds until it determines that it has jurisdiction. Hawaii Plastics, 528 F.2d at 912.
 
 
 36
 In the case at bar, the district court considered whether it had subject matter jurisdiction and concluded that it did--provisionally. That is, the district court determined that it could exercise jurisdiction over the consolidated case, as long as it entered no final judgment in favor of a plaintiff with a jurisdictionally insufficient claim. Entry of final judgment before identifying which plaintiffs must be dismissed undermines the only basis on which the district court can conceivably maintain jurisdiction over this case. To avoid disposing of this case on non-jurisdictional grounds before the district court "cures" the acknowledged jurisdictional defects, I would require that the district court postpone the entry of final judgment against LAQ until it first determines that it has jurisdiction over every plaintiff who will share in the judgment, as required by Zahn, 414 U.S. 291, 94 S.Ct. 505 and Rule 23(c)(3).
 
 II.
 
 37
 The majority opinion declines to reach the question whether the entry of final judgment in this case is proper on the grounds that the non-settling defendants lack standing to challenge the settlement agreement. I disagree with this conclusion. I do, however, agree with the majority's statement of the law in Section III with respect to standing: a non-settling defendant "must show some cognizable prejudice to a legal relationship between it and the settling parties." Maj. op. at 1332. I also agree that this test is met (1) when the terms of the settlement preclude the non-settling defendant from seeking contribution or indemnification from the settling defendant, and (2) when the settlement otherwise affects the rights of the non-settling defendant. Maj. op. at 1332. I part company with the majority only in its conclusion that the non-settling defendants have failed to meet the "legal prejudice" test in this case.
 
 A.
 
 38
 The parties agree and the majority apparently recognizes that the non-settling defendants will be prejudiced by the LAQ settlement. The non-settling defendants will be prejudiced because in many jurisdictions, a defendant's good faith settlement (such as the settlement of LAQ in this case) extinguishes contribution and indemnity rights of joint tortfeasors. See Board of Education of McDowell County v. Zando, Martin & Milstead, Inc., 390 S.E.2d 796, 803-804 (W.Va.1990) (collecting cases); Lowe v. Norfolk & Western Ry. Co., 753 S.W.2d 891, 894-95 (Mo.1988) (en banc). The effect will be that the non-settling defendants will not be entitled under the law of many jurisdictions to obtain a reduced judgment against themselves for the share or percentage of the judgment attributable to the conduct of LAQ.[2] Indeed, LAQ has conceded that "the settlement may have the effect, under applicable law, of barring non-settling defendants from seeking contribution or indemnity from LAQ for certain Class members' claims." App. at 656.
 
 
 39
 The settlement agreement with LAQ seeks to vitiate this prejudice by including a provision stating that any judgment for contribution that a non-settling defendant obtains against LAQ will be satisfied by a reduction from that non-settling defendant's liability to the prevailing plaintiff class.[3] In essence, the plaintiff class has agreed as part of the settlement with LAQ that it will reduce from any judgment it obtains against a non-settling defendant any liability LAQ has to the non-settling defendant as a result of LAQ being a joint tortfeasor.
 
 
 40
 The determinative question is whether LAQ and the plaintiffs can defeat the non-settling defendants' standing to challenge a settlement agreement which prejudices their rights merely by including a provision in the settlement agreement that plaintiffs will reduce their judgment against the non-settling defendants by the amount of the contribution judgment against LAQ. I believe that the inclusion of such a provision cannot defeat the non-settling defendants' standing for two reasons: first, there is no precedent for it; and second, there is no guarantee that this right to a set-off will be enforceable against the plaintiff class in the event the settlement agreement were later found to be unfair, inadequate, or entered into pursuant to an inadequate procedure. In short, a non-settling defendant could find itself cut off under state law from its rights of indemnity or contribution against LAQ by the existence of a good faith settlement agreement between LAQ and the plaintiff class, and yet unable to enforce the right to a reduced judgment that it purportedly received in exchange.
 
 B.
 
 41
 The majority has cited only one authority for the proposition that a provision in a settlement agreement can defeat a non-settling defendants' standing. That sole authority is the 1990 pocket part of Herbert B. Newberg's treatise on class actions. 2 Newberg on Class Actions Sec. 11.54 n. 261 (2d ed. 1990 Supp.).[4] The pocket part cites no court or other authority for its statement.
 
 
 42
 Mr. Newberg is a paid advocate, not a disinterested scholar. He entered an appearance as co-lead counsel in this case on May 10, 1984. He signed the briefs on this appeal and argued one of the related cases at oral argument. Under the circumstances, the assertion in his treatise, which he added while this case was pending, must be treated like the partisan opinion of a paid advocate. I am at a loss to understand why the majority has found it persuasive and has relied on it as the sole authority for the proposition that a plaintiff can defeat a non-settling defendant's standing by such a provision in the settlement agreement. In the 1985 edition of his treatise, Mr. Newberg recognized no limitation to the general rule that "non-settling defendants ... may object to any terms [in a settlement] that preclude them from seeking indemnification from the settling defendants." 2 Newberg on Class Actions Sec. 11.54 (2d ed. 1985) (footnotes omitted).
 
 C.
 
 43
 The non-settling defendants raise several grounds for asserting that the settlement agreement might not bind the plaintiff class. Essentially, the non-settling defendants argue that the settlement notice mailed to the class members was not sufficient to enable a class member to judge the settlement's reasonableness. As a result, the non-settling defendants are concerned that they will not be able to enforce the settlement agreement, but will nevertheless have lost their rights to contribution or indemnity under the laws of some jurisdictions.
 
 
 44
 The first problem with the notice mailed to class members is that it did not disclose that there was severe doubt regarding the district court's subject matter jurisdiction. There are 35,000 institutions which receive notice regarding the class action. The court does not have jurisdiction over all of them. None of the class members, however, have been informed that their rights are not being litigated in the class action. Quite the contrary, each class member has every reason to believe that not only are its rights being adjudicated, but that it cannot seek to recover damages on its own because the federal class action is the exclusive forum for resolving the asbestos in schools liability issues. In the meantime, some of those class members (perhaps even a majority) will not only fail to share in the settlement, but also lose their ability to pursue relief separately since the applicable statutes of limitation will eventually expire. Accordingly, the class members who received notice of the partial settlement were unable to assess the risks of agreeing to the settlement and were unable to protect themselves by objecting.
 
 
 45
 The second reason that the settlement notice was insufficient is that it failed to explain the significance of the release that the class gave to LAQ. There is no limitation in the amount that the plaintiff class has agreed to set-off. It is consequently possible that the non-settling defendants will have contribution or indemnity claims against LAQ that exceed the amount LAQ has paid to settle its liability in this case. The plaintiff class members have never been informed of this possibility and so were unable to assess the risks of not objecting to the settlement with LAQ.
 
 
 46
 Finally, the settlement notice was inadequate because it was not mailed to all members of the class as required by Rule 23(e) and Procedural Due Process. See Girsh v. Jepson, 521 F.2d 153, 158 (3d Cir.1975). The class is defined as all entities that "own or operate in whole or in part" any public or private elementary and secondary educational facility, as defined in 20 U.S.C.A. Sec. 2854(a)(10) (1982) (current version at 20 U.S.C.A. Sec. 2891(12) (1990)). App. at 153. Notice has only been sent to public and private schools, and not to any non-school private party or state agency. App. at 157. In addition, no notice has ever been sent to any school in Puerto Rico, Guam, American Samoa, the Virgin Islands, the Northern Mariana Islands, and the Trust Territory of the Pacific Islands, although all these areas fall within the statutory definition invoked in the class definition. See 20 U.S.C.A. Sec. 2854(a)(10), (16) (1982) (current version at 20 U.S.C.A. Sec. 2891(12), (22) (1990). See also App. at 153. In other words, plaintiffs have failed to notify some parties that are entitled to receive notice of the class action proceeding, since they are ostensibly members of the plaintiff class.
 
 
 47
 We have previously held that where "notice was fatally defective, all subsequent proceedings pertaining to the settlement are devoid of validity and all settlement orders issued pursuant to those proceedings will therefore be vacated." Greenfield v. Villager Indus., Inc., 483 F.2d 824, 834 (3d Cir.1973). In other words, the non-settling defendants could find that they have received an unenforceable right to a diminution of a judgment in favor of the plaintiff class in exchange for their lost rights to indemnity and contribution from the settling defendant.
 
 
 48
 Even if there is no merit to the claims of the non-settling defendants that the notice was insufficient for the reasons discussed above, I do not think that it comports with Due Process to allow the plaintiffs and LAQ to shift the risk of the unenforceability of the settlement agreement to the non-settling defendants. It is patently unfair to place the non-settling defendants in the position in which they now find themselves--having to accept a potentially unenforceable right to set-off in exchange for the contribution or indemnity remedies they would otherwise have.
 
 III.
 
 49
 Because I believe that the district court lacks subject matter jurisdiction, I would remand to the district court to vacate the judgment and dismiss the case. Even if the district court did have subject matter jurisdiction, the entry of final judgment in this case is inappropriate: the district court has not yet identified the plaintiffs who comprise the class that was certified in these consolidated actions, in violation of the plain language of Rule 23(c)(3). Even without Rule 23(c)(3), precedent requires that we resolve jurisdictional questions before we dispose of a case on the merits. Here the district court must dismiss those plaintiffs with jurisdictionally insufficient or inappropriate claims before it can enter final judgment against any defendant. In addition, I believe that the non-settling defendants have standing to challenge the settlement agreement since it prejudices their rights in a number of ways. I would vacate the judgment and remand to dismiss the class action consistent with my dissent in In re School Asbestos Litig., 921 F.2d 1310 (Cowen, J., dissenting).
 
 
 
 [1]
 Rule 23(c)(3) reads in relevant part:
 The judgment in an action maintained as a class action under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class.
 
 
 [2]
 I realize that in some states this prejudice will be mitigated by a statutory right by the non-settling defendant to receive a set-off in the judgment against it. See 2 Newberg on Class Actions Sec. 12.42A supp. at 124-25 (2d ed. Supp.1990) ("Twenty-two states have adopted some form of 'settlement bar statute.' These statutes permit settling defendants to escape cross- and third-party claims for contribution by granting nonsettling joint tortfeasor codefendants some form of offset rights in any future judgment by the settling plaintiff against them."). Even in these states, the non-settling defendants may be prejudiced depending on which method of set-off the state uses: pro tanto (a reduction in the verdict by the amount that the settling defendant already paid--which could be less than that defendant's proportionate liability, which in turn would leave the non-settling defendants liable for more than their fair share); or pro rata (a reduction in the verdict by that proportion of the judgment that was attributable to the settling defendant). In states that have pro tanto settlement bar statutes, the non-settling defendants are prejudiced by the lost opportunity either to get contribution from the settling defendant or to get a pro rata set-off from the judgment against them
 
 
 [3]
 The settlement agreement provides,
 The Class shall reduce any judgment it obtains against any defendant by the amount, percentage or share of such judgment attributable to LAQ so as to bar, discharge and release under applicable law any claims for contribution or indemnity against LAQ arising from or related to the Claims. In the event that the Class obtains a judgment (including pursuant to a settlement agreement) against one or more defendants in the Litigation and any of those defendants obtains a judgment over, in whole or in part, against LAQ for contribution or indemnity, then the Class will be required to reduce or remit any judgment or portion thereof obtained from those defendants by the amount of the judgment over against LAQ.
 Paragraph 12 of Settlement Agreement, App. at 178.
 
 
 [4]
 Mr. Newberg writes:
 When a class settlement agreement includes a provision that future contribution judgments will be handled according to applicable law or, in the absence of statute, by a reduction in the judgment against non-settling defendants by the amount of any contribution judgment against settling defendants, such a settlement provision expressly recognizes potential contribution rights of non-settling parties, and does not strip them of any rights of contribution or indemnity. Under these circumstances, nonsettling defendants do not gain standing to challenge a settlement by another defendant in multi-party litigation, based on grounds that their contribution or indemnity rights are being affected by the proposed settlement. See Sec. 12.42A.
 
 
 [2]
 Newberg on Class Actions Sec. 11.54 n. 261 (2d ed. 1990 Supp.)