NEW ENGLAND HEALTH CARE EM-PLOYEES PENSION FUND, on behalf of itself and all others similarly situated; Clifford Mosher, on behalf of himself and all others similarly situated; Tejinder Singh, on behalf of himself and all others similarly situated; Sotpal Singh, on behalf of himself and all others similarly situated, Plaintiffs–Appellees,

v.

Robert S. WOODRUFF; Joseph P. Nacchio, Defendants–Appellants,

and

Qwest Communications International, Inc.; Drake S Tempest; James A. Smith; Arthur Andersen L.L.P.; Craig D. Slater; Philip F. Anschutz, Defendants–Appellees.

No. 06–1482.

United States Court of Appeals, Tenth Circuit.

Jan. 16, 2008.

Herbert J. Stern of Stern & Kilcullen, LLC, Roseland, NJ, and David Meister of Clifford Chance, US, LLP, New York, N.Y. (James Miller and David Cook of Clifford Chance, US, LLP, New York, NY; and Jeffrey Speiser and Joel M. Silverstein of Stern & Kilcullen, LLC, Roseland, NJ, with them on the briefs), for Defendants–Appellants.

David R. Boyd of Boies, Schiller & Flexner LLP, Washington, D.C. (Jonathan D. Schiller, Alfred P. Levitt, and Jorge Schmidt P. of Boies, Schiller & Flexner LLP, Washington, D.C.; Terence C. Gill of Sherman & Howard, LLC, Denver, CO, with him on the brief), for Defendant–Appellee Qwest Communications International Inc.

Michael J. Dowd of Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San

Diego, CA (Keith F. Park, Spencer A. Burkholz, and Thomas E. Egler of Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, CA; Sanford Svetcov and Susan K. Alexander of Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Francisco, CA, with him on the brief), for Plaintiffs–Appellees.

Before KELLY, BALDOCK, and BRISCOE, Circuit Judges.

PAUL KELLY, JR., Circuit Judge.

Defendants–Appellants Joseph P. Nacchio and Robert S. Woodruff, the former Chief Executive Officer and Chief Financial Officer of Qwest Communications International, Inc. ("Qwest"), respectively, appeal the district court's approval of a class action settlement in a securities fraud case. The settlement was negotiated between the Plaintiff–Appellee class, including lead plaintiffs New England Health Care Employees' Pension Fund, Clifford Mosher, Tejinder Singh, and Sotpal Singh (collectively "Plaintiffs"), and Defendant–Appellee Qwest, including eleven of its officers. Mr. Nacchio and Mr. Woodruff were not included in the approved settlement. Our jurisdiction arises under 28 U.S.C. § 1291 and we remand to the district court so that it might make appropriate findings and conclusions with respect to Mr. Nacchio and Mr. Woodruff's objections to the settlement.

*Background*

This case began on July 27, 2001 with a class action complaint alleging various federal securities laws violations by employees of Qwest. Aplt. App. at 41. Several other complaints were subsequently filed, and the operative complaint is Plaintiffs' fifth amended complaint filed on February 6, 2004 which includes fourteen former Qwest employees and Arthur Andersen accountants as defendants (Arthur Anderson LLP joins Qwest's brief and contributed to the settlement). *Id.* at 87, 179–385; Aplt. Br. at 4; Aplee. Br. at 2 n. 1. After "difficult" and "arms' length" negotiations with mediators, Aplt.App. at 710, Qwest and eleven of its officers came to a settlement agreement with the Plaintiff class, and Plaintiffs filed an unopposed motion for preliminary approval of a stipulation for partial settlement on November 23, 2005. *Id.* at 153, 1057–1109; Pl. Br. at 3–4.

Mr. Nacchio and Mr. Woodruff were not included in the settlement negotiations but were informed that they would be included if they would pay personally into any settlement fund. Aplt.App. at 880–81. Plaintiffs believed that Mr. Nacchio and Mr. Woodruff were especially culpable and should not be allowed to join a settlement in which only Qwest would pay. *Id.* Mr. Nacchio and Mr. Woodruff were not so inclined and therefore were not included in the final settlement. *Id.* at 881. Both Mr. Nacchio and Mr. Woodruff have agreements with Qwest that require Qwest to indemnify them for any reasonable amounts they might pay in settlement of a lawsuit against them as former directors or officers. *Id.* at 554, 655–56; Aplt. Br. at 7.

The settlement includes three provisions that are at issue in this appeal. Aplt. Br. at 7–8. The first, as required by Section 21D of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4, bars contribution claims between and among the Released Persons and Non–Settling Defendants (defined to include Mr. Nacchio and Mr. Woodruff) "based on, relating to, or arising out of the Released Claims." Aplt.App. at 1009. This is the Reform Act Bar.[1] *See id.*

---

1. In the Reform Act Bar and the Complete Bar described below, the definitions of the terms "Non–Settling Defendants" and "Released Persons" include parties who were not

The second states, in relevant part, that "the Non–Settling Defendants ... are ... permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any claim, if any, however styled, whether for indemnification, contribution, or otherwise and whether arising under state, federal, or common law, against the Released Persons based on, arising out of, or relating to the Released Claims." *Id.* This is the Complete Bar. *See id.* at 1010.

The third provision includes two separate provisions that are grouped and addressed together as the Contractual Provisions. *Id.* at 1010–11; Aplee Br. at 12. The first states that "the Class will not settle any claim or judgment against a Non–Settling Defendant without obtaining from the Non–Settling Defendant the release of any and all claims the Non–Settling Defendant may have against any of the Released Persons based on, arising out of, relating to, or in connection with the Released Claims or the subject matter thereof." Aplt.App. at 1011. The second orders that "to the extent (but only to the extent) not covered by the Reform Act Bar Order and/or the Complete Bar Order, the Lead Plaintiffs, on behalf of themselves and the Class, further agree that they will reduce or credit any settlement or judgment (up to the amount of such settlement or judgment) they may obtain against a Non–Settling Defendant by an amount equal to the amount of any settlement or final, non-appealable judgment that a Non–Settling Defendant may obtain against any of the Released Persons based on, arising out of, relating to, or in connection with the Released Claims or the subject matter thereof." *Id.* at 1010.

before the district court. Aplt.App. at 10 ("Non–Settling Defendant" defined to explicitly include Mr. Nacchio and Mr. Woodruff); *id.* at 11–12 (definition of "Related Parties").

The district court preliminarily approved the partial settlement on January 5, 2006, *id.* at 156, and, after a motion by Plaintiffs and briefing by the parties, a hearing on final approval of the settlement was held on May 19, 2006. Aplt.App. at 934–94. Mr. Nacchio and Mr. Woodruff objected to the settlement on several grounds. *Id.* at 952–58. All parties were heard at this hearing. *Id.* at 934–94. On September 29, 2006, the district court entered its Partial Final Judgment and Order of Partial Dismissal with Prejudice ("PFJ"), overruling Mr. Nacchio and Mr. Woodruff's objections "[b]ased on the reasons stated, arguments advanced, and authorities cited by Qwest in its reply." *Id.* at 173, 1004. The district court held that the settlement was "fair, reasonable, and adequate" to the extent Fed.R.Civ.P. 23(e)(1)(C) applies to Mr. Nacchio and Mr. Woodruff. *Id.* at 1005. The district court entered its final Judgment on October 2, 2006. Aplt.App. at 174, 1044.[2] Mr. Nacchio and Mr. Woodruff's appeal followed. *Id.* at 178, 1051.

## Discussion

Mr. Nacchio and Mr. Woodruff attack the district court's approval of the settlement on several grounds, but we need only address whether they have standing to challenge the settlement and whether the district court provided sufficient findings and conclusions pursuant to the PFJ for appellate review. We hold that Mr. Nacchio and Mr. Woodruff have standing and remand the case for the district court to provide a more extensive explanation for its decision.

2. An Order Granting Qwest's Unopposed Motion Seeking Relief from Judgment under Fed.R.Civ.P. 60(a) followed on January 8, 2007, correcting an error in the PFJ that is not being appealed. Aplt.App. at 177, 1052.

*I. Standing*

█ It is well established that any party, including the court *sua sponte*, can raise the issue of standing for the first time at any stage of the litigation, including on appeal. *Rector v. City and County of Denver*, 348 F.3d 935, 942 (10th Cir. 2003). Qwest did not object to Mr. Nacchio and Mr. Woodruff's standing in the district court but now challenge it. Aplee. Br. at 25 n. 11.

█ "Whether a plaintiff has standing is a legal question, which we review *de novo*." *Lippoldt v. Cole*, 468 F.3d 1204, 1216 (10th Cir.2006). Federal courts may only hear actual "Cases" or "Controversies," U.S. Const. art. III, § 2, cl.1, and a plaintiff bears the burden of proving standing. *See Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir.2007). A plaintiff must prove (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.*

█ In order to have standing to challenge a settlement, non-settling parties must demonstrate that they have been prejudiced by the settlement. *In re Integra Realty Res., Inc. (In re Integra I )*, 262 F.3d 1089, 1102 (10th Cir.2001). "Plain legal prejudice sufficient to confer standing upon a non-settling litigant in a class action has been found to include any interference with a party's contract rights or a party's ability to seek contribution or indemnification." *Id.* (quoting *Agretti v. ANR Freight Sys.*, 982 F.2d 242, 247 (7th Cir.1992)) (internal brackets omitted). "A party also suffers plain legal prejudice if the settlement strips the party of a legal claim or cause of action, such as a cross

claim or the right to present relevant evidence at trial." *Id.* at 1102–03.

█ Qwest argues that Mr. Nacchio and Mr. Woodruff do not have standing to challenge the Contractual Provisions, the Complete Bar, or the Reform Act Bar. *See* Aplee. Br. at 25–30. First, it argues that the Contractual Provisions simply reflect an agreement in which Plaintiffs will not collect money from Mr. Nacchio and Mr. Woodruff for which Qwest and the other Released Persons are ultimately liable, and that Mr. Nacchio and Mr. Woodruff are not deprived of any claims or legal rights. *Id.* at 25. Thus, Mr. Nacchio and Mr. Woodruff cannot show they have suffered an "injury in fact." *Id.* at 26–27. Similarly, Mr. Nacchio and Mr. Woodruff cannot show an "injury in fact" with respect to "independent claims" (claims related to the same factual situation as the settlement but not based upon liability to Plaintiffs) and claims by "non-parties who were not before the court" that are barred by the Complete Bar and the Reform Act Bar. *Id.* at 28. Mr. Nacchio and Mr. Woodruff, Qwest argues, have not identified any particular "independent claims" or "non-parties," the claims of non-parties that would be barred, or how they have standing to represent any non-parties' interests. *Id.* Qwest suggests that any "independent claims" could be brought once they actually develop. *Id.* at 29–30.

We disagree. As to the Complete Bar and the Reform Act Bar, clearly, Mr. Nacchio and Mr. Woodruff have standing to challenge these provisions: both Bar Orders strip Mr. Nacchio and Mr. Woodruff of their contribution and indemnification rights, in addition to certain independent claims. Further, in this case, the Contractual Provisions clearly impact Mr. Nacchio and Mr. Woodruff's contribution and indemnification rights by requiring them to release their claims against Qwest and

then lose the benefit of any possible indemnification in a settlement with Plaintiffs. As fail-safe protection for Qwest, Plaintiffs, in addition to obtaining a release from Mr. Nacchio and Mr. Woodruff, must lower any agreed settlement amount by the indemnity amount Mr. Nacchio and Mr. Woodruff could receive from Qwest, making it impossible for Mr. Nacchio and Mr. Woodruff to receive any indemnification from a settlement with Plaintiffs. Such an arrangement, in addition to the Bar Orders that eliminate certain independent claims and claims against non-parties, essentially strip, and, in any event, palpably interfere with, Mr. Nacchio and Mr. Woodruff's preexisting rights and potential legal claims. They have therefore suffered the requisite plain legal prejudice sufficient to confer standing with respect to both the Contractual Provisions and the Bar Orders. *See id.; see also TBG, Inc. v. Bendis*, 36 F.3d 916, 929 (10th Cir.1994) (holding that "the court should not purport to bar claims it has no power to bar, even if it thinks that there really are no such claims").

The dissent argues that Mr. Nacchio and Mr. Woodruff do not have standing to challenge the Contractual Provisions because the Contractual Provisions represent "a private contractual agreement" between Plaintiffs and Qwest that does not divest Mr. Nacchio and Mr. Woodruff of any preexisting rights or legal claims. As noted, the Contractual Provisions interfere with Mr. Nacchio and Mr. Woodruff's indemnification claims against Qwest. Our precedent in this regard, upon which the dissent relies, clearly held that " 'plain legal prejudice ... has been found to include *any* interference with a party's contract rights or a party's *ability* to seek contribution or indemnification.' " *In re Integra I*, 262 F.3d at 1102 (quoting *Agretti*, 982 F.2d at 247) (emphasis added). In *In re Integra I*, the opt-out parties lacked standing on a claim that immediate payment of settlement amounts would make it more difficult for the opt-out parties to defend their cases. In contrast, the Contractual Provisions here interfere with Mr. Nacchio and Mr. Woodruff's *ability* to seek indemnification and therefore come within the terms of our precedent.[3]

**3.** Notably, the instant matter is readily distinguishable from cases in which courts have held that non-settling defendants failed to demonstrate that the settlement agreements they sought to challenge "legal[ly] prejudice[d]" them. *See In re Integra I*, 262 F.3d at 1102. Unlike those non-settling defendants whose interests were found to be "merely the loss of some practical or strategic advantage in litigating their case[s]," here the Contractual Provisions effectively vitiate and—at minimum, palpably interfere with—Mr. Nacchio and Mr. Woodruff's legal rights. *See id.* at 1103 (no legal prejudice demonstrated by non-settling defendants who objected to settlement by alleging, "[a]t most," that the settlement "placed them at a tactical disadvantage" in the litigation); *Skull Valley Band of Goshute Indians v. Nielson*, 376 F.3d 1223, 1234 (10th Cir.2004) (narrowly construing the facts in *In re Integra I*, 262 F.3d at 1101–03); *see also Agretti*, 982 F.2d at 246 (no legal prejudice demonstrated by non-settling defendant who objected to settlement under which

the non-settling defendant: (1) "still ha[d] all of its rights under the contract and may protect those rights through any contractual provisions or legal action"; and (2) was not "precluded in any manner from enforcing its rights"), *Mayfield v. Barr*, 985 F.2d 1090, 1093 (D.C.Cir.1993) (no legal prejudice demonstrated by non-settling defendant who chose to opt out and, thus, "did not involuntarily lose his individual claim"), and *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583–84 (9th Cir.1987) (no legal prejudice demonstrated by non-settling defendant who objected to settlement that did "not cut off or in anyway affect any" of the non-settling defendant's claims), all cited in *In re Integra I*, 262 F.3d at 1102.

The dissent contends that *Agretti* actually supports a lack of standing and the absence of legal prejudice in this case. We disagree. It bears noting that *Agretti* did not analyze standing in terms of a loss of indemnification or contribution rights. Rather, the employer

## II. *The District Court's Analysis*

 The district court's approval of a class action settlement is reviewed for an abuse of discretion. *Shoels v. Klebold,* 375 F.3d 1054, 1060 (10th Cir.2004). "[W]henever a district judge is required to make a discretionary ruling that is subject to appellate review, we have to satisfy ourselves, before we can conclude that the judge did not abuse his discretion, that he exercised his discretion, that is, that he considered the factors relevant to that exercise." *United States v. Cunningham,* 429 F.3d 673, 679 (7th Cir.2005). Mr. Nacchio and Mr. Woodruff argue that, because the district court approved the challenged provisions merely on the basis of "the reasons stated, arguments advanced, and authorities cited by Qwest in it reply," without any independent reasoning or analysis, the case must be remanded for an explanation with more particularity. Aplt. Br. at 19. For a slightly different reason, we agree.

 We recognize that findings of fact and conclusions of law supplied by a party and adopted verbatim by a district court will not automatically render a decision reversible and are held to the normal appellate standards. *See Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 571–72, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). This case, however, is different. The district court in *Anderson* provided a clear listing of its findings of fact and conclusions of law for appellate review. 557

F.Supp. 412 (D.N.C.1983). The district court here, after summarizing Mr. Nacchio and Mr. Woodruff's contentions and explaining the challenged provisions, simply "overrule[d]" Mr. Nacchio and Mr. Woodruff's objections, noting only that the provisions were "either legally required, or [were] legally appropriate" in the case "[b]ased on the reasons stated, arguments advanced, and authorities cited by Qwest in its reply." Moreover, the district court's order did not address a supplemental brief filed by Mr. Nacchio and Mr. Woodruff (apparently filed without objection) responding to that reply. Aplt.App. 924–933; Aplt. Reply Br. at 7–8.

 This is insufficient. When it comes to page after page of complex legal argument, we need to know what path the district court followed. Qwest's reply contains twenty-one pages of text and eight exhibits spanning one hundred thirty-three pages. Aplt.App. at 681–840. The reply is argument to the district court and was not intended to represent any findings or conclusions for an appellate court to review. "We prefer to assess the justification [for a bar order] in the first instance on the basis of concrete facts found by the district court, and with the assistance of the district court's full consideration and discussion of all of the relevant facts of the instant case and a full discussion of the relevant persuasive authorities and the underlying reasons and policies justifying whatever order the district court ultimate-

---

argued that the settlement invalidated its contract with the union, violated its due process rights, was unlawful and against public policy. The court rejected these grounds because the contract was unaffected by the settlement agreement and the employer retained all of its contractual and legal rights because the union only was required to make some "unilateral declarations." 982 F.2d at 247–48.

The settlement here requires Plaintiffs to do more than simply make unilateral declarations. The Contractual Provisions mandate

that Plaintiffs must obtain a release of any indemnification claims Mr. Nacchio and Mr. Woodruff have against Qwest in a settlement with them and must reduce the settlement amount by any amount Mr. Nacchio and Mr. Woodruff might still receive as an indemnity from Qwest. This is not a "declaration" but rather an agreement requiring Plaintiffs to interfere with Mr. Nacchio and Mr. Woodruff's ability to seek indemnification from a settlement. *See In re Integra I,* 262 F.3d at 1102.

ly approves." *AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305, 1312 (11th Cir.2004). On remand, the district court should illuminate its overruling of Mr. Nacchio and Mr. Woodruff's objections.

The dissent relies upon *In re Integra Realty Res. (Integra II)*, 354 F.3d 1246, 1268–69 (10th Cir.2004) to suggest that we should decide the case on the current record. Just as we are unwilling to exercise the discretion of the district court, we are unwilling to guess at the path the district court followed in resolving serious legal issues, as opposed to factual matters. We need something to show *how*, and on what basis, the court analyzed Mr. Nacchio and Mr. Woodruff's objections, in a form other than Qwest's argument. A remand of this case is the only way to ensure that we get it.

■■■ The district court here, in addition to addressing any matters it might find appropriate, should determine whether the contribution bar order mandated by the PSLRA is exclusive. *Deloitte*, 361 F.3d at 1312 n. 14. If the district court determines that the PSLRA bar order is not exclusive, then it should address the persuasive authorities, reasons, and policies for and against the imposition of a broader bar order that would bar claims arising from liability to plaintiffs other than the instant plaintiffs or would bar truly independent claims. *Id.* The district court should address any particular fact or circumstance relevant to its resolution and state why it is relevant, *id.*, keeping in mind that "the court should not purport to

bar claims it has no power to bar, even if it thinks that there really are no such claims." *Bendis*, 36 F.3d at 929. Finally, after engaging in this analysis, the district court should determine whether the settlement is "fair, reasonable, and adequate" under Fed.R.Civ.P. 23(e)(2). *See Deloitte*, 361 F.3d at 1312 n. 14.

REMANDED.

BRISCOE, Circuit Judge, dissenting:

Because the majority errs (1) in its determination that Joseph Nacchio and Robert Woodruff ("Non–Settling Defendants") have standing to contest the two Contractual Provisions, and (2) in its decision to remand to the district court for a more detailed analysis of Non–Settling Defendants' objections, I respectfully dissent.

### I.

I agree with the majority that Non–Settling Defendants have standing to contest the Complete Bar Order and the Reform Act Bar Order. I disagree, however, that they have standing to contest the two Contractual Provisions.

The Contractual Provisions protect the Settling Defendants and other Released Persons in the event that the Bar Orders fail to do so. The first of the Contractual Provisions is an indemnification clause. It provides, in essence, that if Plaintiffs obtain a settlement or judgment against Non–Settling Defendants, and Non–Settling Defendants successfully recover some of that liability from any of the Released Persons, then Plaintiffs will subtract that amount from the settlement or judgment against Non–Settling Defendants.[1] Simi-

---

1. The first Contractual Provision provides, in relevant part:

 To the extent (but only to the extent) not covered by the Reform Act Bar Order and/or the Complete Bar Order, the Lead Plaintiffs, on behalf of themselves and the Class, further agree that they will reduce or credit any settlement or judgment (up to the amount of such settlement or judg-

ment) they may obtain against a Non–Settling Defendant by an amount equal to the amount of any settlement or final, non-appealable judgment that a Non–Settling Defendant may obtain against any of the Released Persons based upon, arising out of, relating to, or in connection with the Released Claims or the subject matter thereof. In the event that a settlement is

larly, the second of the Contractual Provisions contains an agreement by Plaintiffs not to settle any claim or judgment against Non–Settling Defendants without obtaining a release of any claims Non–Settling Defendants may have against the Released Persons.[2]

Non–Settling Defendants do not have standing to challenge these provisions. To have standing under Article III, Non–Settling Defendants "must demonstrate standing for each claim that [they] seek[ ] to press." *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 126 S.Ct. 1854, 1867, 164 L.Ed.2d 589 (2006). In a closely analogous situation, we recently explained:

> Non-settling defendants generally have no standing to complain about a settlement, since they are not members of the settling class. . . .
>
> Courts have recognized a limited exception to this rule where nonsettling parties can demonstrate they are "prejudiced" by a settlement. However, it is not sufficient for [the non-settling defendants] to show merely the loss of some practical or strategic advantage in litigating their case. "Prejudice" in this context means "plain legal prejudice," as

when the settlement strips the party of a legal claim or cause of action.

*In re Integra Realty Res., Inc. (In re Integra I),* 262 F.3d 1089, 1102 (10th Cir. 2001) (citations, alterations, and some internal quotation marks omitted).

Contrary to the majority's misreading of the Contractual Provisions, they do not "essentially strip" or "palpably interfere with" Non–Settling Defendants' "preexisting rights and potential legal claims." (Majority Op. at 1289.) Rather, the Contractual Provisions simply provide for a private contractual agreement between Plaintiffs and the Released Persons, whereby Plaintiffs agree not to negotiate a settlement with Non–Settling Defendants that prejudices the Released Persons—and to indemnify the Released Persons if they do. Even if the practical effect of the Contractual Provisions is to decrease Plaintiffs' incentive to settle with the Non–Settling Defendants, this "show[s] merely the loss of some practical or strategic advantage in litigating their case," rather than any "plain legal prejudice." *In re Integra I,* 262 F.3d at 1102.

---

reached between Lead Plaintiffs or the Class and a Non–Settling Defendant, or final judgment is entered in favor of Lead Plaintiffs or the Class against a Non–Settling Defendant before the resolution of that Non–Settling Defendant's potential claims against any Released Person, any funds collected on account of such settlement or judgment shall not be distributed, but shall be retained by the Escrow Agent pending the resolution of any potential claim by the Non–Settling Defendant ... against such Released Person(s) as provided in Paragraphs 11.3 and 11.4 of this Stipulation. . . . Inclusion of this Paragraph 11.3 in the Judgment is material to Settling Defendants' decision to participate in this Stipulation.

Stip. of Partial Settlement, ROA, Vol. III, at 1091–92, ¶ 11.3.

**2.** The full language of the second Contractual Provision reads:

> The Class will not settle any claim or judgment against a Non–Settling Defendant without obtaining from the Non–Settling Defendant the release of any and all claims the Non–Settling Defendant may have against any of the Released Persons based upon, arising out of, relating to or in connection with the Released Claims or the subject matter thereof, provided that each Settling Defendant shall execute and provide to the Non–Settling Defendant a release in a form that is satisfactory both to the Settling Defendants and the Non–Settling Defendant. Inclusion of this Paragraph 11.4 in the Judgment is material to Settling Defendants' decision to participate in this Stipulation.

Stip. of Partial Settlement, ROA, Vol. III, at 1092, ¶ 11.4.

By paraphrasing the terms of the second Contractual Provision as "mandat[ing] that Plaintiffs must obtain a release," (Majority Op. at 1289–90 n. 3), the majority omits the simple fact that Non–Settling Defendants remain in control of whether they will, or will not, enter into a settlement with Plaintiffs in the first place. Non–Settling Defendants have choices. Unless and until Non–Settling Defendants agree to a settlement with Plaintiffs, the question of a release does not arise. As for the first Contractual Provision, which the majority describes as "mandat[ing] that Plaintiffs ... must reduce the settlement amount by any amount [Non–Settling Defendants] might still receive as an indemnity from Qwest," (Majority Op. at 1289–90 n. 3), this provision merely guarantees that Plaintiffs will not indirectly recover additional amounts from the Released Persons, over and above the $400 million that the Released Persons have already agreed to pay under the Settlement. This provision ensures that, if Plaintiffs recover $X from Non–Settling Defendants, and Non–Settling Defendants later recover that amount ($X) from the Released Persons (via, for instance, an action for indemnification), then Plaintiffs will reduce their recovery against Non–Settling Defendants to nothing. This agreement is solely between Plaintiffs and the Released Persons. It guarantees the Released Persons that their total liability will be $400 million—no more, no less—and provides them with the peace of mind that settling parties both expect and require. Non–Settling Defendants are not prejudiced by either Contractual Provision.

The majority's standing analysis, moreover, is infinitely open-ended, and its perfunctory attempt to reconcile its holding with *In re Integra I* is unpersuasive. (Majority Op. at 1289.) The majority relies upon an isolated statement from *In re Integra I* that " '[p]lain legal prejudice ... has been found to include any interference with a party's contract rights or a party's ability to seek contribution or indemnification.' " *In re Integra I*, 262 F.3d at 1102 (quoting *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247–48 (7th Cir.1992)). However, the Seventh Circuit's decision in *Agretti*—from which the above-quoted language was lifted verbatim—shows exactly why Non–Settling Defendants do not have standing to contest the Contractual Provisions in this case. In *Agretti*, 982 F.2d at 244, two defendants—ANR and Local Union No. 710—had previously agreed upon a labor contract, and a majority of the members of Local 710 had ratified the contract. Several members of Local 710, though, brought a class action against ANR and Local 710, arguing, among other things, that the ratification process was improper. *Id.* at 244–45. Eventually, the plaintiff class reached a settlement with Local 710, which "required Local 710 to declare the ... ratification vote and ANR's implementation of the profit sharing plan void; ... and required Local 710 to assist the plaintiffs and cooperate with them for the rest of the litigation against ANR." *Id.* at 245. The non-settling defendant, ANR, objected to the settlement, arguing that "it suffer[ed] plain legal prejudice because the settlement invalidate[d] its contracts with Local 710 and violate[d] its due process rights," and that its "contract rights [were] invalidated by the settlement ... because the settlement require[d] a repudiation of the contract between Local 710 and ANR." *Id.* at 247. The Seventh Circuit flatly rejected this argument:

> We do not believe that ANR's rights are legally prejudiced by this provision or any other one in the settlement. Local 710 is not repudiating the contract, the settlement simply requires it to make some unilateral declarations. ANR still has all of its rights under the contract and may protect those rights through any contractual provisions or legal ac-

tion. Nor is ANR precluded in any manner from enforcing its rights under the contract with Local 710. While Local 710 is required under the settlement to declare the ratification vote and implementation of the profit sharing plan void, ANR may continue to assert its position that the vote and profit sharing plan are valid and enforceable.

*Id.* at 247–48.

Like ANR, Non–Settling Defendants here are not "legally prejudiced" by the Contractual Provisions. *Id.* at 247. The Contractual Provisions "simply require[ ] ... some unilateral declarations" by parties other than Non–Settling Defendants. *Id.* at 247–48. Non–Settling Defendants "still ha[ve] all of [their] rights under the[ir indemnification] contract[s] and may protect those rights through any contractual provisions or legal action." *Id.* at 248. "Nor [are Non–Settling Defendants] precluded in any manner from enforcing [their] rights under the[ir] contract[s] with [Qwest]." *Id.* Even with the Contractual Provisions in force, Non–Settling Defendants "may continue to assert [their] position that [their indemnification rights are] valid and enforceable." *Id.* Thus, under the Seventh Circuit's decision in *Agretti*, which we relied upon verbatim in *In re Integra I*, 262 F.3d at 1102, the majority's standing analysis fails, and Non–Settling Defendants lack standing to challenge the Contractual Provisions here.[3] *See also In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir.1990) (holding that non-settling defendants lacked standing to challenge a similar provision).

In their briefs, Non–Settling Defendants appear to recognize that their standing argument is weak as to the Contractual Provisions, and they assert a scattershot of alleged injuries resulting from the Contractual Provisions. None of the alleged injuries, however, is sufficient to confer standing. For instance, Non–Settling Defendants contend, in passing, that the provisions were a breach of Qwest's "Bylaws, contracts with Non–Settling Defendants and obligations of good faith and fair dealing," as well as a tortious interference with their indemnification rights. Non–Settling Defendants' Reply Br. at 24–25. Non–Settling Defendants, though, provide no legal authority for such claims and do not explain how the Contractual Provisions rise to such a level. *See Am. Airlines v. Christensen*, 967 F.2d 410, 415 n. 8 (10th Cir.1992) ("It is insufficient merely to state in one's brief that one is appealing an adverse ruling below without advancing reasoned argument as to the grounds for the appeal.").

## II.

The majority also errs in vacating the district court's order and remanding for more detailed analysis by the district court.

The district court's consideration and analysis, while not perfect, were more than adequate in this case. In a recent case, we addressed an almost identical situation as the one we face here, where objectors "argue[d] that the district court did not adequately support its approval of the Settlement by explaining the reasons for its approval and for its rejection of the objections that were raised." *In re Integra Realty Res., Inc. (In re Integra II)*, 354 F.3d 1246, 1268 (10th Cir.2004) (citations

---

**3.** Indeed, it is ironic that the majority has to go through such lengths to distinguish the facts of *Agretti*, (Majority Op. at 1289–90 n. 3), considering that the majority relies upon *Agretti* verbatim for its legal standard. Compounding the error, the majority's attempt to distinguish *Agretti* ends up being nothing more than "a distinction without a difference."

and internal quotation marks omitted). We explained:

> To be sure, " 'a reviewing court [must] have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boilerplate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law.' " *Newman v. Stein,* 464 F.2d 689, 692 (2d Cir.1972) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 434, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968)). However, while more extensive explanation by the district court may have been helpful to our review, we will not overturn the district court's decision on the basis of a "merely formal" deficiency as long as the decision finds support in the record. *Protective Comm.,* 390 U.S. at 437, 88 S.Ct. 1157.

*Id.* (alteration in original). Because the district court in that case (1) "considered all prior proceedings in the case and all objections and submissions that were made in connection with the proposed settlement," (2) reviewed "materials [that] ... included all written objections to the settlement," (3) "heard objections" at the settlement fairness hearing, and (4) "was aware of all the issues that appellants now argue should have been considered when determining the settlement's fairness," we held that "the district court did not abuse its discretion by approving the settlement." *Id.* at 1268-69.

Here, as in *In re Integra II,* the district court reviewed and considered all of the submissions and materials. *See* Hearing Transcript, ROA, Vol. III, at 939 (explaining that the "reasons stated, arguments advanced and authorities already cited" have been "carefully read and considered by the court, and its most competent and able staff"); Dist. Ct. Order, ROA, Vol. III, at 1004 ("I have reviewed carefully the Stipulation, Nacchio and Woodruff's objections, Qwest's reply to the objections of Nacchio and Woodruff, and the applicable law.").[4] Here, as in *In re Integra II,* the district court entertained objections at a fairness hearing. As Appellee Qwest notes, "[c]ounsel for both Nacchio and Woodruff attended the hearing, and counsel for Nacchio presented argument on behalf of both of them." Appellee Qwest's Br. at 21; *see* Hearing Transcript, ROA, Vol. III, at 934–35, 952–58. Here, as in *In re Integra II,* 354 F.3d at 1269, the district court was "aware of all the issues that Non–Settling Defendants now argue should have been considered when determining the settlement's fairness," particularly in light of the parties' extensive briefing on those issues.

Given the district court's obligation to analyze the settlement and ensure its fairness towards all parties involved—not just Non–Settling Defendants—the district court's analysis of Non–Settling Defendants' objections in two-and-a-half pages of a twelve-page opinion was reasonable. *See Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1243 (9th Cir.1998) (holding that the district court appropriately "outlined ... objections, gave his responses, and stated why he believed the settlement to be fair,

---

4. The majority is incorrect that the district court never read or considered Non–Settling Defendants' Supplemental Brief. At the fairness hearing, which occurred *after* Non–Settling Defendants submitted their Supplemental Brief, the district court instructed the parties that their "papers" had been "carefully read and considered by the court, and its most competent and able staff." Hearing Transcript, ROA, Vol. III, at 939. To be fair, the district court did not say, "I have read your Supplemental Brief," but we usually do not require a district court to provide such an explicit acknowledgment of a party's submission to the court.

reasonable, and adequate in a 16–page Order and a 7–page Judgment"). Even if the district court's adoption of Qwest's Reply Brief for its "reasons stated, arguments advanced, and authorities cited," Dist. Ct. Order, ROA, Vol. III, at 1004, was more cursory than we might prefer, the referenced Reply Brief nevertheless contained appropriate legal and factual support for the district court's conclusions and analysis, and we can adequately discern the basis for the district court's decision. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 437, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968) ("If, indeed, the record contained adequate facts to support the decision of the trial court to approve the proposed compromises, a reviewing court would be properly reluctant to attack that action solely because the court failed adequately to set forth its reasons or the evidence on which they were based.").

Moreover, the record on appeal contains all of the briefs that the parties submitted to the district court, as well as the transcript of the hearing in front of the district court and the decision of the district court—not to mention a fresh set of briefs totaling almost 200 pages. Given the detail of this record and the district court's specific adoption of the reasoning and authorities cited in Qwest's Reply Brief as its ruling, we have very little difficulty in framing the issues at hand or in discerning the district court's rulings on those issues. Vacating and remanding, simply to force the district court to combine all of its reasoning and support into one document, would create needless delay in a case that is already over six years old.

The majority relies almost entirely on the Eleventh Circuit's decision in *AAL High Yield Bond Fund v. Deloitte & Touche LLP,* 361 F.3d 1305, 1312 (11th Cir.2004), in which the court vacated a bar order in a securities litigation settlement

and remanded for "the assistance of the district court's full consideration and discussion of all of the relevant facts of the instant case and a full discussion of the relevant persuasive authorities and the underlying reasons and policies justifying whatever order the district court ultimately approves." Admittedly, *AAL High Yield Bond Fund* provides support for vacating and remanding to the district court. However, the district court in *AAL High Yield Bond Fund* appears to have undertaken less analysis than the district court did here, and the issues in the instant case are appropriately framed and defined for appeal. Moreover, as explained *supra,* our own decision in *In re Integra II* is controlling here and strongly favors our accepting the district court's ruling for review without requiring further explication, the Eleventh Circuit's decision notwithstanding.