**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 2, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

NEW ENGLAND HEALTH CARE
EMPLOYEES PENSION FUND, on
behalf of itself and all others similarly
situated; CLIFFORD MOSHER, on
behalf of himself and all others
similarly situated; TEJINDER SINGH,
on behalf of himself and all others
similarly situated; SOTPAL SINGH,
on behalf of himself and all others
similarly situated,

     Plaintiffs - Appellees,

v.

ROBERT S. WOODRUFF; JOSEPH P.
NACCHIO,

     Defendants - Appellants,

     and

QWEST COMMUNICATIONS
INTERNATIONAL, INC.; DRAKE S
TEMPEST; JAMES A. SMITH;
ARTHUR ANDERSEN L.L.P.;
CRAIG D. SLATER; PHILIP F.
ANSCHUTZ,

     Defendants - Appellees.

No. 06-1482
(512 F.3d 1283)

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 01-cv-01451-REB-PAC, 02-cv-00333-REB-PAC, 02-cv-00507-REB-
PAC, 02-cv–00374-REB-PAC, 02-cv-00755-REB-PAC, 02-cv-00798-REB-
PAC, 02-cv-00658-REB-PAC, 01-cv-01799-REB-PAC, 01-cv-01472-REB-
PAC, 01-cv-01527-REB-PAC, 01-cv-01930-REB-PAC, 01-cv-01616-REB-
PAC, 01-cv-02083-REB-PAC)

Before **KELLY**, **BALDOCK**, and **BRISCOE**, Circuit Judges.

## ORDER

Appellee Qwest Communications International Inc.'s petition[1] for panel

rehearing is denied by the panel. Judge Briscoe would grant panel rehearing for

the reasons stated in her dissent. Judge Baldock would grant panel rehearing to

hold that once appellants demonstrate plain legal prejudice as to one provision of

the settlement agreement, they have standing to object to all of the agreement's

provisions. Judge Baldock continues to concur in the result of the panel opinion.

Because neither Judge Briscoe's dissent, nor Judge Baldock's view of standing

commands a panel majority, the petition for panel rehearing is denied.

The suggestion for en banc rehearing was transmitted to all judges of the

court who are in regular active service. No poll on the suggestion was requested

---

[1] Lead Plaintiffs-Appellees New England Health Care Employees Pension
Fund, et al. have joined in the petition for panel rehearing and the petition for
rehearing en banc.

and the suggestion is therefore denied.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

06-1482, *New England Health Care Employees Pension Fund v. Woodruff*

**BALDOCK,** Circuit Judge, dissenting from the denial for panel rehearing.

In their Response to Appellees' Petition for Rehearing and Petition for Rehearing En Banc, Appellants argue that they are not required to demonstrate standing as to each provision of the partial settlement agreement in challenging the district court's Fed. R. Civ. P. 23(e) ruling.  The Court's opinion correctly concludes Appellants have standing to challenge the district court's approval of the partial settlement agreement.  In so doing, however, the Court considers whether Appellants made this showing with respect to *each* provision of the settlement Appellants object to on the merits (*i.e.*, the Complete Bar Order, the Reform Act Bar Order, and the so-called Contractual Provisions).  See New England Health Care Employees Pension Fund v. Woodruff, 512 F.3d 1283, 1288-89 (10th Cir. Jan. 16, 2008).  Because that portion of the opinion is susceptible to misinterpretation, and because of standing's fundamental importance, we should grant the petition to clarify this portion of the Court's opinion.  The denial of the Petition is otherwise well-taken.

As Appellants aptly note in their Response to the Petition, once they demonstrate "plain legal prejudice" under *any* provision of the partial settlement agreement, they have standing to challenge the district court's approval of that settlement on *any* ground.  By addressing whether the Contractual Provisions prejudice Appellants, *after* concluding Appellants made the requisite showing of

plain legal prejudice as to the Complete Bar Order and the Reform Act Bar Order provisions, I fear the Court's decision — as presently written — risks muddying our standing jurisprudence.[1] Lower courts and litigants could easily interpret the majority opinion's extended standing discussion to mean Appellants must demonstrate "plain legal prejudice" as to *each* provision of the settlement agreement they wish to challenge on the merits. This is incorrect.

While no court of appeals has expressly addressed this precise issue — indeed, few courts have addressed non-settling defendants' standing to contest partial settlement agreements at all — core tenets of our standing jurisprudence demonstrate that Appellants need only demonstrate "plain legal prejudice" under one provision of the partial settlement agreement to have standing to challenge the district court's approval of the agreement.[2] In re Integra Realty Res., Inc.,

---

[1] The portion of the majority opinion that concerns me is as follows:

> As to the Complete Bar and the Reform Act Bar, clearly, Mr. Nacchio and Mr. Woodruff have standing to challenge these provisions . . . . Further, in this case, the Contractual Provisions clearly impact Mr. Nacchio and Mr. Woodruff's contribution and indemnification rights . . . . They have therefore suffered the requisite plain legal prejudice sufficient to *confer standing with respect to both the Contractual Provisions and the Bar Orders*.

New England Health Care Employees Pension Fund, 512 F.3d at 1288-89 (emphasis added).

[2] See, e.g., Eichenholtz v. Brennan, 52 F.3d 478, 487 (3d Cir. 1995) (holding that non-settling defendants had standing to challenge the district court's approval of the underlying partial settlement agreement after concluding that non-settling defendants made the requisite "plain legal prejudice" showing as to *one*

- 2 -

262 F.3d 1089, 1103 (10th Cir. 2001) ("'Prejudice' in this context means 'plain legal prejudice,' as when '*the settlement* strips the party of a legal claim or cause of action.'" (emphasis added) (quoting Agretti v. ANR Freight Sys., 982 F.2d 242, 246 (7th Cir. 1992)) (additional quotation omitted).  Any doubt is dispelled when we focus upon the "case-or-controversy" at bar.  Here, Appellants appeal the district court's *approval* of the underlying settlement agreement as a whole, rather than any particular provision.  See Fed. R. Civ. P. 23(e) ("[T]he court may approve [the proposed settlement] only after . . . finding that it is fair, reasonable, and adequate.").

Admittedly, 4 Newberg on Class Action § 11:55 (4th ed. 2002) counsels otherwise:

> [N]onsettling defendants in a multiple defendant litigation context have *no standing to object to the fairness or adequacy of the settlement by other defendants*, but they *may object to any terms* that preclude them from seeking indemnification from the settling defendants.  Nonsettling defendants also have standing to object if they can show some formal legal prejudice to them, apart from loss of contribution or indemnity rights.

---

provision of the agreement); see also, e.g., Alumax Mill Prods., Inc. v. Congress Fin. Corp., 912 F.2d 996, 1001-02 (8th Cir. 1990) (holding that a non-settling defendant has standing "to object where it can demonstrate that it will sustain some formal legal prejudice *as a result of the settlement*," but declining to expressly consider whether each objection to the partial settlement agreement raised by the non-settling defendant met this standard (emphasis added)); Waller v. Fin. Corp. of Am., 828 F.2d 579, 582 (9th Cir. 1987) (recognizing that "a non-settling defendant [has standing] to object where it can demonstrate that it will sustain some formal legal prejudice *as a result of the settlement*" (emphasis added)).

(emphasis added), <u>cited with approval in</u> <u>In re Integra Realty Res., Inc.</u>, 262 F.3d at 1103.  The scant case law that exists on this subject cites this language frequently.  <u>See, e.g.</u>, <u>In re Integra Realty Res., Inc.</u>, 262 F.3d at 1103; <u>In re Viatron Computer Sys. Corp. Litig.</u>, 614 F.2d 11, 14 (1st Cir. 1979); <u>In re Beef Indus. Antitrust Litig.</u>, 607 F.2d 167, 172 (5th Cir. 1979).  Notwithstanding courts' reliance on Newberg's language, whether it deserves great weight is entirely another matter.

Tellingly, any substantive analysis demonstrating the merits of this position is, at best, elusive.  <u>See, e.g.</u>, <u>In re Rite Aid Corp. Sec. Litig.</u>, 146 F. Supp. 2d 706, 716 n.12 (E.D. Pa. 2001) (noting that whether nonsettling defendants, who had standing to challenge a Bar Order, also had "the right to object to the settlement as having been obtained by unfair conduct . . . is a . . . close[] question," but electing to "merely note th[e] issue and move on").  Indeed, tracing this language to its origin in the first edition of <u>Newberg on Class Actions</u>, it appears Newberg — without independent analysis — relies on several district court cases for his conclusion.  <u>See</u> 3 <u>Newberg on Class Actions</u> § 5660b at 564-65 (1977).  Review of the cases cited by Newberg also reveals no substantive analysis of this issue.  While presumably Newberg's perspective is best understood in light of "[p]ublic policy strongly favor[ing] the pretrial settlement of class action lawsuits," <u>see</u> <u>In re U.S. Oil & Gas Litig.</u>, 967 F.2d 489, 493 (11th Cir. 1992), Article III standing represents "the irreducible constitutional

- 4 -

minimum" requirements for maintaining a "case-or-controversy." See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "At its core . . . constitutional standing requires a court to ask not only whether an injury has occurred, but whether the injury that has occurred may serve as the basis for a legal remedy in the federal courts." See Bd. of County Comm'rs. v. Geringer, 297 F.3d 1108, 1112 (10th Cir. 2002). Put simply, I believe Newberg's view is mistaken because it conflates the standing and merits analysis.

Additionally, whether Appellants must demonstrate standing as to each provision of the partial settlement agreement is also the point at which the majority and dissent diverge. Clearly, the dissent to the Court's opinion is correct that "[t]o have standing under Article III, Non-Settling Defendants 'must demonstrate standing for *each claim* that [they] seek[] to press.'" See New England Health Care Employees Pension Fund, 512 F.3d at 1292 (quoting DaimlerChrysler Corp. v. Cuno, 126 S. Ct. 1854, 1867 (2006)). But applying that general principle here requires careful consideration of this matter's procedural posture. Again, the Appellants' appeal is *not* to any particular portion of the partial settlement. Quite clearly, Appellants appeal from the district court's Fed. R. Civ. P. 23(e) *approval* of the parties' partial settlement agreement *as a whole*. As such, Appellants' objections to the settlement agreement's Complete Bar Order, Reform Act Bar Order, and Contractual Provisions are *not* separate "claims," which Appellants "seek[] to press." See DaimlerChrysler, 126 S. Ct. at

1867; see Black's Law Dictionary 240 (7th. ed. 1999) (defining a "claim" as, *inter alia*, "[a]n interest or remedy recognized at law; the means by which a person can obtain a privilege, possession, or enjoyment of a right or thing; CAUSE OF ACTION"). Rather, the ultimate issue presented by Appellants on appeal is whether the district court abused its discretion in concluding the settlement agreement, as a whole, "is fair, reasonable, and adequate." See Fed. R. Civ. P. 23(e); see also Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 186 (10th Cir. 2002).

In my view, by demonstrating that the partial settlement agreement causes them plain legal prejudice in any regard, Appellants satisfy the requirements of standing to challenge the approval of the agreement. See Eichenholtz, 52 F.3d at 482 ("Where the rights of third parties are affected, it is not enough to evaluate the fairness of the settlement to the settling parties; the interests of such third parties must be considered."). The Court's opinion perpetuates ambiguity in an area of the law that desperately needs clarification. As such, I respectfully dissent from the denial of panel rehearing.[3]

---

[3] Further, given that Appellants demonstrated "plain legal prejudice" by the Bar Order or the Complete Bar Order, the dissent's understanding of the Contractual Provisions' effect — however correct for Rule 23(e) purposes — goes to the merits, not standing. See New England Health Care Employees Pension Fund, No. 06-1482, Dissenting Op. at 1-8.

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 16, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

NEW ENGLAND HEALTH CARE
EMPLOYEES PENSION FUND, on
behalf of itself and all others similarly
situated; CLIFFORD MOSHER, on
behalf of himself and all others
similarly situated; TEJINDER SINGH,
on behalf of himself and all others
similarly situated; SOTPAL SINGH,
on behalf of himself and all others
similarly situated,

      Plaintiffs - Appellees,

v.

ROBERT S. WOODRUFF; JOSEPH P.
NACCHIO,

      Defendants - Appellants,

      and

QWEST COMMUNICATIONS
INTERNATIONAL, INC.; DRAKE S
TEMPEST; JAMES A. SMITH;
ARTHUR ANDERSEN L.L.P.;
CRAIG D. SLATER; PHILIP F.
ANSCHUTZ,

      Defendants - Appellees.

No. 06-1482

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 01-cv-01451-REB-PAC, 02-cv-00333-REB-PAC, 02-cv-00507-REB-**
**PAC, 02-cv–00374-REB-PAC, 02-cv-00755-REB-PAC, 02-cv-00798-REB-**
**PAC, 02-cv-00658-REB-PAC, 01-cv-01799-REB-PAC, 01-cv-01472-REB-**
**PAC, 01-cv-01527-REB-PAC, 01-cv-01930-REB-PAC, 01-cv-01616-REB-**
**PAC, 01-cv-02083-REB-PAC)**

Herbert J. Stern of Stern & Kilcullen, LLC, Roseland, New Jersey, and David Meister of Clifford Chance, US, LLP, New York, New York (James Miller and David Cook of Clifford Chance, US, LLP, New York, New York; and Jeffrey Speiser and Joel M. Silverstein of Stern & Kilcullen, LLC, Roseland, New Jersey, with them on the briefs), for Defendants-Appellants.


David R. Boyd of Boies, Schiller & Flexner LLP, Washington, D.C. (Jonathan D. Schiller, Alfred P. Levitt, and Jorge Schmidt P. of Boies, Schiller & Flexner LLP, Washington, D.C.; Terence C. Gill of Sherman & Howard, LLC, Denver, Colorado, with him on the brief), for Defendant-Appellee Qwest Communications International Inc.


Michael J. Dowd of Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, California (Keith F. Park, Spencer A. Burkholz, and Thomas E. Egler of Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, California; Sanford Svetcov and Susan K. Alexander of Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Francisco, California, with him on the brief), for Plaintiffs-Appellees.


Before **KELLY**, **BALDOCK**, and **BRISCOE**, Circuit Judges.

**KELLY**, Circuit Judge.

Defendants-Appellants Joseph P. Nacchio and Robert S. Woodruff, the former Chief Executive Officer and Chief Financial Officer of Qwest Communications International, Inc. ("Qwest"), respectively, appeal the district court's approval of a class action settlement in a securities fraud case. The settlement was negotiated between the Plaintiff-Appellee class, including lead plaintiffs New England Health Care Employees' Pension Fund, Clifford Mosher, Tejinder Singh, and Sotpal Singh (collectively "Plaintiffs"), and Defendant-Appellee Qwest, including eleven of its officers. Mr. Nacchio and Mr. Woodruff were not included in the approved settlement. Our jurisdiction arises under 28 U.S.C. § 1291 and we remand to the district court so that it might make appropriate findings and conclusions with respect to Mr. Nacchio and Mr. Woodruff's objections to the settlement.

Background

This case began on July 27, 2001 with a class action complaint alleging various federal securities laws violations by employees of Qwest. Aplt. App. at 41. Several other complaints were subsequently filed, and the operative complaint is Plaintiffs' fifth amended complaint filed on February 6, 2004 which

includes fourteen former Qwest employees and Arthur Andersen accountants as defendants (Arthur Anderson LLP joins Qwest's brief and contributed to the settlement). Id. at 87, 179-385; Aplt. Br. at 4; Aplee. Br. at 2 n.1. After "difficult" and "arms' length" negotiations with mediators, Aplt. App. at 710, Qwest and eleven of its officers came to a settlement agreement with the Plaintiff class, and Plaintiffs filed an unopposed motion for preliminary approval of a stipulation for partial settlement on November 23, 2005. Id. at 153, 1057-1109; Pl. Br. at 3-4.

Mr. Nacchio and Mr. Woodruff were not included in the settlement negotiations but were informed that they would be included if they would pay personally into any settlement fund. Aplt. App. at 880-81. Plaintiffs believed that Mr. Nacchio and Mr. Woodruff were especially culpable and should not be allowed to join a settlement in which only Qwest would pay. Id. Mr. Nacchio and Mr. Woodruff were not so inclined and therefore were not included in the final settlement. Id. at 881. Both Mr. Nacchio and Mr. Woodruff have agreements with Qwest that require Qwest to indemnify them for any reasonable amounts they might pay in settlement of a lawsuit against them as former directors or officers. Id. at 554, 655-56; Aplt. Br. at 7.

The settlement includes three provisions that are at issue in this appeal. Aplt. Br. at 7-8. The first, as required by Section 21D of the Private Securities

- 4 -

Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, bars contribution claims between and among the Released Persons and Non-Settling Defendants (defined to include Mr. Nacchio and Mr. Woodruff) "based on, relating to, or arising out of the Released Claims." Aplt. App. at 1009. This is the Reform Act Bar.[1] See id.

The second states, in relevant part, that "the Non-Settling Defendants . . . are . . . permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any claim, if any, however styled, whether for indemnification, contribution, or otherwise and whether arising under state, federal, or common law, against the Released Persons based on, arising out of, or relating to the Released Claims." Id. This is the Complete Bar. See id. at 1010.

The third provision includes two separate provisions that are grouped and addressed together as the Contractual Provisions. Id. at 1010-11; Aplee Br. at 12. The first states that "the Class will not settle any claim or judgment against a Non-Settling Defendant without obtaining from the Non-Settling Defendant the release of any and all claims the Non-Settling Defendant may have against any of the Released Persons based on, arising out of, relating to, or in connection with

---

[1] In the Reform Act Bar and the Complete Bar described below, the definitions of the terms "Non-Settling Defendants" and "Released Persons" include parties who were not before the district court. Aplt. App. at 10 ("Non-Settling Defendant" defined to explicitly include Mr. Nacchio and Mr. Woodruff); id. at 11-12 (definition of "Related Parties").

the Released Claims or the subject matter thereof." Aplt. App. at 1011. The second orders that "to the extent (but only to the extent) not covered by the Reform Act Bar Order and/or the Complete Bar Order, the Lead Plaintiffs, on behalf of themselves and the Class, further agree that they will reduce or credit any settlement or judgment (up to the amount of such settlement or judgment) they may obtain against a Non-Settling Defendant by an amount equal to the amount of any settlement or final, non-appealable judgment that a Non-Settling Defendant may obtain against any of the Released Persons based on, arising out of, relating to, or in connection with the Released Claims or the subject matter thereof." Id. at 1010.

The district court preliminarily approved the partial settlement on January 5, 2006, id. at 156, and, after a motion by Plaintiffs and briefing by the parties, a hearing on final approval of the settlement was held on May 19, 2006. Aplt. App. at 934-94. Mr. Nacchio and Mr. Woodruff objected to the settlement on several grounds. Id. at 952-58. All parties were heard at this hearing. Id. at 934-94. On September 29, 2006, the district court entered its Partial Final Judgment and Order of Partial Dismissal with Prejudice ("PFJ"), overruling Mr. Nacchio and Mr. Woodruff's objections "[b]ased on the reasons stated, arguments advanced, and authorities cited by Qwest in its reply." Id. at 173, 1004. The district court held that the settlement was "fair, reasonable, and adequate" to the extent Fed. R. Civ. P. 23(e)(1)(C) applies to Mr. Nacchio and Mr. Woodruff. Id. at 1005. The

- 6 -

district court entered its final Judgment on October 2, 2006. Aplt. App. at 174, 1044.[2] Mr. Nacchio and Mr. Woodruff's appeal followed. Id. at 178, 1051.

## Discussion

Mr. Nacchio and Mr. Woodruff attack the district court's approval of the settlement on several grounds, but we need only address whether they have standing to challenge the settlement and whether the district court provided sufficient findings and conclusions pursuant to the PFJ for appellate review. We hold that Mr. Nacchio and Mr. Woodruff have standing and remand the case for the district court to provide a more extensive explanation for its decision.

I.      Standing

It is well established that any party, including the court *sua sponte*, can raise the issue of standing for the first time at any stage of the litigation, including on appeal. Rector v. City and County of Denver, 348 F.3d 935, 942 (10th Cir. 2003). Qwest did not object to Mr. Nacchio and Mr. Woodruff's standing in the district court but now challenge it. Aplee. Br. at 25 n.11.

"Whether a plaintiff has standing is a legal question, which we review *de novo*." Lippoldt v. Cole, 468 F.3d 1204, 1216 (10th Cir. 2006). Federal courts

---

[2] An Order Granting Qwest's Unopposed Motion Seeking Relief from Judgment under Fed. R. Civ. P. 60(a) followed on January 8, 2007, correcting an error in the PFJ that is not being appealed. Aplt. App. at 177, 1052.

may only hear actual "Cases" or "Controversies," U.S. Const. art. III, § 2, cl.1, and a plaintiff bears the burden of proving standing. See Bronson v. Swensen, 500 F.3d 1099, 1106 (10th Cir. 2007). A plaintiff must prove (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Id.

In order to have standing to challenge a settlement, non-settling parties must demonstrate that they have been prejudiced by the settlement. In re Integra Realty Res., Inc. (In re Integra I), 262 F.3d 1089, 1102 (10th Cir. 2001). "Plain legal prejudice sufficient to confer standing upon a non-settling litigant in a class action has been found to include any interference with a party's contract rights or a party's ability to seek contribution or indemnification." Id. (quoting Agretti v. ANR Freight Sys., 982 F.2d 242, 247 (7th Cir. 1992)) (internal brackets omitted). "A party also suffers plain legal prejudice if the settlement strips the party of a legal claim or cause of action, such as a cross claim or the right to present relevant evidence at trial." Id. at 1102-03.

Qwest argues that Mr. Nacchio and Mr. Woodruff do not have standing to challenge the Contractual Provisions, the Complete Bar, or the Reform Act Bar. See Aplee. Br. at 25-30. First, it argues that the Contractual Provisions simply

reflect an agreement in which Plaintiffs will not collect money from Mr. Nacchio and Mr. Woodruff for which Qwest and the other Released Persons are ultimately liable, and that Mr. Nacchio and Mr. Woodruff are not deprived of any claims or legal rights. Id. at 25. Thus, Mr. Nacchio and Mr. Woodruff cannot show they have suffered an "injury in fact." Id. at 26-27. Similarly, Mr. Nacchio and Mr. Woodruff cannot show an "injury in fact" with respect to "independent claims" (claims related to the same factual situation as the settlement but not based upon liability to Plaintiffs) and claims by "non-parties who were not before the court" that are barred by the Complete Bar and the Reform Act Bar. Id. at 28. Mr. Nacchio and Mr. Woodruff, Qwest argues, have not identified any particular "independent claims" or "non-parties," the claims of non-parties that would be barred, or how they have standing to represent any non-parties' interests. Id. Qwest suggests that any "independent claims" could be brought once they actually develop. Id. at 29-30.

We disagree. As to the Complete Bar and the Reform Act Bar, clearly, Mr. Nacchio and Mr. Woodruff have standing to challenge these provisions: both Bar Orders strip Mr. Nacchio and Mr. Woodruff of their contribution and indemnification rights, in addition to certain independent claims. Further, in this case, the Contractual Provisions clearly impact Mr. Nacchio and Mr. Woodruff's contribution and indemnification rights by requiring them to release their claims against Qwest and then lose the benefit of any possible indemnification in a

settlement with Plaintiffs. As fail-safe protection for Qwest, Plaintiffs, in addition to obtaining a release from Mr. Nacchio and Mr. Woodruff, must lower any agreed settlement amount by the indemnity amount Mr. Nacchio and Mr. Woodruff could receive from Qwest, making it impossible for Mr. Nacchio and Mr. Woodruff to receive any indemnification from a settlement with Plaintiffs. Such an arrangement, in addition to the Bar Orders that eliminate certain independent claims and claims against non-parties, essentially strip, and, in any event, palpably interfere with, Mr. Nacchio and Mr. Woodruff's preexisting rights and potential legal claims. They have therefore suffered the requisite plain legal prejudice sufficient to confer standing with respect to both the Contractual Provisions and the Bar Orders. See id.; see also TBG, Inc. v. Bendis, 36 F.3d 916, 929 (10th Cir. 1994) (holding that "the court should not purport to bar claims it has no power to bar, even if it thinks that there really are no such claims").

The dissent argues that Mr. Nacchio and Mr. Woodruff do not have standing to challenge the Contractual Provisions because the Contractual Provisions represent "a private contractual agreement" between Plaintiffs and Qwest that does not divest Mr. Nacchio and Mr. Woodruff of any preexisting rights or legal claims. As noted, the Contractual Provisions interfere with Mr. Nacchio and Mr. Woodruff's indemnification claims against Qwest. Our precedent in this regard, upon which the dissent relies, clearly held that "'plain legal prejudice . . . has been found to include *any* interference with a party's

contract rights or a party's *ability* to seek contribution or indemnification.'" In re Integra I, 262 F.3d at 1102 (quoting Agretti, 982 F.2d at 247) (emphasis added). In In re Integra I, the opt-out parties lacked standing on a claim that immediate payment of settlement amounts would make it more difficult for the opt-out parties to defend their cases. In contrast, the Contractual Provisions here interfere with Mr. Nacchio and Mr. Woodruff's *ability* to seek indemnification and therefore come within the terms of our precedent.[3]

---

[3] Notably, the instant matter is readily distinguishable from cases in which courts have held that non-settling defendants failed to demonstrate that the settlement agreements they sought to challenge "legal[ly] prejudice[d]" them. See In re Integra I, 262 F.3d at 1102. Unlike those non-settling defendants whose interests were found to be "merely the loss of some practical or strategic advantage in litigating their case[s]," here the Contractual Provisions effectively vitiate and—at minimum, palpably interfere with—Mr. Nacchio and Mr. Woodruff's legal rights. See id. at 1103 (no legal prejudice demonstrated by non-settling defendants who objected to settlement by alleging, "[a]t most," that the settlement "placed them at a tactical disadvantage" in the litigation); Skull Valley Band of Goshute Indians v. Nielson, 376 F.3d 1223, 1234 (10th Cir. 2004) (narrowly construing the facts in In re Integra I, 376 F.3d at 1101-03); see also Agretti, 982 F.2d at 246 (no legal prejudice demonstrated by non-settling defendant who objected to settlement under which the non-settling defendant: (1) "still ha[d] all of its rights under the contract and may protect those rights through any contractual provisions or legal action"; and (2) was not "precluded in any manner from enforcing its rights"), Mayfield v. Barr, 985 F.2d 1090, 1093 (D.C. Cir. 1993) (no legal prejudice demonstrated by non-settling defendant who chose to opt out and, thus, "did not involuntarily lose his individual claim"), and Waller v. Fin. Corp. of Am., 828 F.2d 579, 583-84 (9th Cir. 1987) (no legal prejudice demonstrated by non-settling defendant who objected to settlement that did "not cut off or in anyway affect any" of the non-settling defendant's claims), all cited in In re Integra I, 262 F.3d at 1102.

The dissent contends that Agretti actually supports a lack of standing and the absence of legal prejudice in this case. We disagree. It bears noting that Agretti did not analyze standing in terms of a loss of indemnification or

II.     The District Court's Analysis

The district court's approval of a class action settlement is reviewed for an abuse of discretion.  Shoels v. Klebold, 375 F.3d 1054, 1060 (10th Cir. 2004).  "[W]henever a district judge is required to make a discretionary ruling that is subject to appellate review, we have to satisfy ourselves, before we can conclude that the judge did not abuse his discretion, that he exercised his discretion, that is, that he considered the factors relevant to that exercise."  United States v. Cunningham, 429 F.3d 673, 679 (7th Cir. 2005).  Mr. Nacchio and Mr. Woodruff argue that, because the district court approved the challenged provisions merely on the basis of "the reasons stated, arguments advanced, and authorities cited by Qwest in it reply," without any independent reasoning or analysis, the case must be remanded for an explanation with more particularity.  Aplt. Br. at 19.  For a

contribution rights.  Rather, the employer argued that the settlement invalidated its contract with the union, violated its due process rights, was unlawful and against public policy.  The court rejected these grounds because the contract was unaffected by the settlement agreement and the employer retained all of its contractual and legal rights because the union only was required to make some "unilateral declarations."  982 F.2d at 247-48.

The settlement here requires Plaintiffs to do more than simply make unilateral declarations.  The Contractual Provisions mandate that Plaintiffs must obtain a release of any indemnification claims Mr. Nacchio and Mr. Woodruff have against Qwest in a settlement with them and must reduce the settlement amount by any amount Mr. Nacchio and Mr. Woodruff might still receive as an indemnity from Qwest.  This is not a "declaration" but rather an agreement requiring Plaintiffs to interfere with Mr. Nacchio and Mr. Woodruff's ability to seek indemnification from a settlement.  See In re Integra I, 262 F.3d at 1102.

slightly different reason, we agree.

We recognize that findings of fact and conclusions of law supplied by a party and adopted verbatim by a district court will not automatically render a decision reversible and are held to the normal appellate standards. See Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 571-72 (1985). This case, however, is different. The district court in Anderson provided a clear listing of its findings of fact and conclusions of law for appellate review. 557 F.Supp. 412 (D.N.C. 1983). The district court here, after summarizing Mr. Nacchio and Mr. Woodruff's contentions and explaining the challenged provisions, simply "overrule[d]" Mr. Nacchio and Mr. Woodruff's objections, noting only that the provisions were "either legally required, or [were] legally appropriate" in the case "[b]ased on the reasons stated, arguments advanced, and authorities cited by Qwest in its reply." Moreover, the district court's order did not address a supplemental brief filed by Mr. Nacchio and Mr. Woodruff (apparently filed without objection) responding to that reply. Aplt. App. 924-933; Aplt. Reply Br. at 7-8.

This is insufficient. When it comes to page after page of complex legal argument, we need to know what path the district court followed. Qwest's reply contains twenty-one pages of text and eight exhibits spanning one hundred thirty-three pages. Aplt. App. at 681-840. The reply is argument to the district court

and was not intended to represent any findings or conclusions for an appellate court to review. "We prefer to assess the justification [for a bar order] in the first instance on the basis of concrete facts found by the district court, and with the assistance of the district court's full consideration and discussion of all of the relevant facts of the instant case and a full discussion of the relevant persuasive authorities and the underlying reasons and policies justifying whatever order the district court ultimately approves." AAL High Yield Bond Fund v. Deloitte & Touche LLP, 361 F.3d 1305, 1312 (11th Cir. 2004). On remand, the district court should illuminate its overruling of Mr. Nacchio and Mr. Woodruff's objections.

The dissent relies upon In re Integra Realty Res. (Integra II), 354 F.3d 1246, 1268-69 (10th Cir. 2004) to suggest that we should decide the case on the current record. Just as we are unwilling to exercise the discretion of the district court, we are unwilling to guess at the path the district court followed in resolving serious legal issues, as opposed to factual matters. We need something to show *how*, and on what basis, the court analyzed Mr. Nacchio and Mr. Woodruff's objections, in a form other than Qwest's argument. A remand of this case is the only way to ensure that we get it.

The district court here, in addition to addressing any matters it might find appropriate, should determine whether the contribution bar order mandated by the PSLRA is exclusive. Deloitte, 361 F.3d at 1312 n.14. If the district court

determines that the PSLRA bar order is not exclusive, then it should address the persuasive authorities, reasons, and policies for and against the imposition of a broader bar order that would bar claims arising from liability to plaintiffs other than the instant plaintiffs or would bar truly independent claims. Id. The district court should address any particular fact or circumstance relevant to its resolution and state why it is relevant, id., keeping in mind that "the court should not purport to bar claims it has no power to bar, even if it thinks that there really are no such claims." Bendis, 36 F.3d at 929. Finally, after engaging in this analysis, the district court should determine whether the settlement is "fair, reasonable, and adequate" under Fed. R. Civ. P. 23(e)(2). See Deloitte, 361 F.3d at 1312 n.14.

REMANDED.

06-1482, New England Health Care Employees Pension Fund, et al. v. Woodruff, et al.

**BRISCOE**, Circuit Judge, dissenting:

Because the majority errs (1) in its determination that Joseph Nacchio and Robert Woodruff ("Non-Settling Defendants") have standing to contest the two Contractual Provisions, and (2) in its decision to remand to the district court for a more detailed analysis of Non-Settling Defendants' objections, I respectfully dissent.

I.

I agree with the majority that Non-Settling Defendants have standing to contest the Complete Bar Order and the Reform Act Bar Order. I disagree, however, that they have standing to contest the two Contractual Provisions.

The Contractual Provisions protect the Settling Defendants and other Released Persons in the event that the Bar Orders fail to do so. The first of the Contractual Provisions is an indemnification clause. It provides, in essence, that if Plaintiffs obtain a settlement or judgment against Non-Settling Defendants, and Non-Settling Defendants successfully recover some of that liability from any of the Released Persons, then Plaintiffs will subtract that amount from the settlement or judgment against Non-Settling Defendants.[1] Similarly, the second of the

_____

[1] The first Contractual Provision provides, in relevant part:

To the extent (but only to the extent) not covered by the Reform Act

Contractual Provisions contains an agreement by Plaintiffs not to settle any claim

or judgment against Non-Settling Defendants without obtaining a release of any

claims Non-Settling Defendants may have against the Released Persons.[2]

> Bar Order and/or the Complete Bar Order, the Lead Plaintiffs, on behalf of themselves and the Class, further agree that they will reduce or credit any settlement or judgment (up to the amount of such settlement or judgment) they may obtain against a Non-Settling Defendant by an amount equal to the amount of any settlement or final, non-appealable judgment that a Non-Settling Defendant may obtain against any of the Released Persons based upon, arising out of, relating to, or in connection with the Released Claims or the subject matter thereof.  In the event that a settlement is reached between Lead Plaintiffs or the Class and a Non-Settling Defendant, or final judgment is entered in favor of Lead Plaintiffs or the Class against a Non-Settling Defendant before the resolution of that Non-Settling Defendant's potential claims against any Released Person, any funds collected on account of such settlement or judgment shall not be distributed, but shall be retained by the Escrow Agent pending the resolution of any potential claim by the Non-Settling Defendant . . . against such Released Person(s) as provided in Paragraphs 11.3 and 11.4 of this Stipulation. . . .  Inclusion of this Paragraph 11.3 in the Judgment is material to Settling Defendants' decision to participate in this Stipulation.

Stip. of Partial Settlement, ROA, Vol. III, at 1091-92, ¶ 11.3.

> [2] The full language of the second Contractual Provision reads:
>
> The Class will not settle any claim or judgment against a Non-Settling Defendant without obtaining from the Non-Settling Defendant the release of any and all claims the Non-Settling Defendant may have against any of the Released Persons based upon, arising out of, relating to or in connection with the Released Claims or the subject matter thereof, provided that each Settling Defendant shall execute and provide to the Non-Settling Defendant a release in a form that is satisfactory both to the Settling Defendants and the Non-Settling Defendant.  Inclusion of this Paragraph 11.4 in the Judgment is material to Settling Defendants' decision to participate

Non-Settling Defendants do not have standing to challenge these provisions. To have standing under Article III, Non-Settling Defendants "must demonstrate standing for each claim that [they] seek[] to press." DaimlerChrysler Corp. v. Cuno, 126 S. Ct. 1854, 1867 (2006). In a closely analogous situation, we recently explained:

> Non-settling defendants generally have no standing to complain about a settlement, since they are not members of the settling class. . . .
>
> Courts have recognized a limited exception to this rule where nonsettling parties can demonstrate they are "prejudiced" by a settlement. However, it is not sufficient for [the non-settling defendants] to show merely the loss of some practical or strategic advantage in litigating their case. "Prejudice" in this context means "plain legal prejudice," as when the settlement strips the party of a legal claim or cause of action.

In re Integra Realty Res., Inc. (In re Integra I), 262 F.3d 1089, 1102 (10th Cir. 2001) (citations, alterations, and some internal quotation marks omitted).

Contrary to the majority's misreading of the Contractual Provisions, they do not "essentially strip" or "palpably interfere with" Non-Settling Defendants' "preexisting rights and potential legal claims." (Majority Op. at 10.) Rather, the Contractual Provisions simply provide for a private contractual agreement between Plaintiffs and the Released Persons, whereby Plaintiffs agree not to

---

in this Stipulation.

Stip. of Partial Settlement, ROA, Vol. III, at 1092, ¶ 11.4.

negotiate a settlement with Non-Settling Defendants that prejudices the Released Persons—and to indemnify the Released Persons if they do. Even if the practical effect of the Contractual Provisions is to decrease Plaintiffs' incentive to settle with the Non-Settling Defendants, this "show[s] merely the loss of some practical or strategic advantage in litigating their case," rather than any "plain legal prejudice." In re Integra I, 262 F.3d at 1102.

By paraphrasing the terms of the second Contractual Provision as "mandat[ing] that Plaintiffs must obtain a release," (Majority Op. at 12 n.3), the majority omits the simple fact that Non-Settling Defendants remain in control of whether they will, or will not, enter into a settlement with Plaintiffs in the first place. Non-Settling Defendants have choices. Unless and until Non-Settling Defendants agree to a settlement with Plaintiffs, the question of a release does not arise. As for the first Contractual Provision, which the majority describes as "mandat[ing] that Plaintiffs . . . must reduce the settlement amount by any amount [Non-Settling Defendants] might still receive as an indemnity from Qwest," (Majority Op. at 12 n.3), this provision merely guarantees that Plaintiffs will not indirectly recover additional amounts from the Released Persons, over and above the $400 million that the Released Persons have already agreed to pay under the Settlement. This provision ensures that, if Plaintiffs recover $X from Non-Settling Defendants, and Non-Settling Defendants later recover that amount ($X) from the Released Persons (via, for instance, an action for indemnification), then

- 4 -

Plaintiffs will reduce their recovery against Non-Settling Defendants to nothing. This agreement is solely between Plaintiffs and the Released Persons. It guarantees the Released Persons that their total liability will be $400 million—no more, no less—and provides them with the peace of mind that settling parties both expect and require. Non-Settling Defendants are not prejudiced by either Contractual Provision.

The majority's standing analysis, moreover, is infinitely open-ended, and its perfunctory attempt to reconcile its holding with In re Integra I is unpersuasive. (Majority Op. at 11.) The majority relies upon an isolated statement from In re Integra I that "'[p]lain legal prejudice . . . has been found to include any interference with a party's contract rights or a party's ability to seek contribution or indemnification.'" In re Integra I, 262 F.3d at 1102 (quoting Agretti v. ANR Freight Sys., Inc., 982 F.2d 242, 247-48 (7th Cir. 1992)). However, the Seventh Circuit's decision in Agretti—from which the above-quoted language was lifted verbatim—shows exactly why Non-Settling Defendants do not have standing to contest the Contractual Provisions in this case. In Agretti, 982 F.2d at 244, two defendants—ANR and Local Union No. 710—had previously agreed upon a labor contract, and a majority of the members of Local 710 had ratified the contract. Several members of Local 710, though, brought a class action against ANR and Local 710, arguing, among other things, that the ratification process was improper. Id. at 244-45. Eventually, the plaintiff class

- 5 -

reached a settlement with Local 710, which "required Local 710 to declare the . . . ratification vote and ANR's implementation of the profit sharing plan void; . . . and required Local 710 to assist the plaintiffs and cooperate with them for the rest of the litigation against ANR." Id. at 245. The non-settling defendant, ANR, objected to the settlement, arguing that "it suffer[ed] plain legal prejudice because the settlement invalidate[d] its contracts with Local 710 and violate[d] its due process rights," and that its "contract rights [were] invalidated by the settlement . . . because the settlement require[d] a repudiation of the contract between Local 710 and ANR." Id. at 247. The Seventh Circuit flatly rejected this argument:

> We do not believe that ANR's rights are legally prejudiced by this provision or any other one in the settlement. Local 710 is not repudiating the contract, the settlement simply requires it to make some unilateral declarations. ANR still has all of its rights under the contract and may protect those rights through any contractual provisions or legal action. Nor is ANR precluded in any manner from enforcing its rights under the contract with Local 710. While Local 710 is required under the settlement to declare the ratification vote and implementation of the profit sharing plan void, ANR may continue to assert its position that the vote and profit sharing plan are valid and enforceable.

Id. at 247-48.

Like ANR, Non-Settling Defendants here are not "legally prejudiced" by the Contractual Provisions. Id. at 247. The Contractual Provisions "simply require[] . . . some unilateral declarations" by parties other than Non-Settling Defendants. Id. at 247-48. Non-Settling Defendants "still ha[ve] all of [their]

rights under the[ir indemnification] contract[s] and may protect those rights through any contractual provisions or legal action." Id. at 248. "Nor [are Non-Settling Defendants] precluded in any manner from enforcing [their] rights under the[ir] contract[s] with [Qwest]." Id. Even with the Contractual Provisions in force, Non-Settling Defendants "may continue to assert [their] position that [their indemnification rights are] valid and enforceable." Id. Thus, under the Seventh Circuit's decision in Agretti, which we relied upon verbatim in In re Integra I, 262 F.3d at 1102, the majority's standing analysis fails, and Non-Settling Defendants lack standing to challenge the Contractual Provisions here.[3] See also In re Sch. Asbestos Litig., 921 F.2d 1330, 1333 (3d Cir. 1990) (holding that non-settling defendants lacked standing to challenge a similar provision).

In their briefs, Non-Settling Defendants appear to recognize that their standing argument is weak as to the Contractual Provisions, and they assert a scattershot of alleged injuries resulting from the Contractual Provisions. None of the alleged injuries, however, is sufficient to confer standing. For instance, Non-Settling Defendants contend, in passing, that the provisions were a breach of Qwest's "Bylaws, contracts with Non-Settling Defendants and obligations of good

---

[3] Indeed, it is ironic that the majority has to go through such lengths to distinguish the facts of Agretti, (Majority Op. at 12 n.3), considering that the majority relies upon Agretti verbatim for its legal standard. Compounding the error, the majority's attempt to distinguish Agretti ends up being nothing more than "a distinction without a difference."

- 7 -

faith and fair dealing," as well as a tortious interference with their indemnification rights. Non-Settling Defendants' Reply Br. at 24-25. Non-Settling Defendants, though, provide no legal authority for such claims and do not explain how the Contractual Provisions rise to such a level. See Am. Airlines v. Christensen, 967 F.2d 410, 415 n.8 (10th Cir. 1992) ("It is insufficient merely to state in one's brief that one is appealing an adverse ruling below without advancing reasoned argument as to the grounds for the appeal.").

## II.

The majority also errs in vacating the district court's order and remanding for more detailed analysis by the district court.

The district court's consideration and analysis, while not perfect, were more than adequate in this case. In a recent case, we addressed an almost identical situation as the one we face here, where objectors "argue[d] that the district court did not adequately support its approval of the Settlement by explaining the reasons for its approval and for its rejection of the objections that were raised." In re Integra Realty Res., Inc. (In re Integra II), 354 F.3d 1246, 1268 (10th Cir. 2004) (citations and internal quotation marks omitted). We explained:

> To be sure, "'a reviewing court [must] have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boilerplate approval phrased in appropriate language but unsupported

by evaluation of the facts or analysis of the law.'" Newman v. Stein, 464 F.2d 689, 692 (2d Cir. 1972) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 434 (1968)). However, while more extensive explanation by the district court may have been helpful to our review, we will not overturn the district court's decision on the basis of a "merely formal" deficiency as long as the decision finds support in the record. Protective Comm., 390 U.S. at 437.

Id. (alteration in original). Because the district court in that case (1) "considered all prior proceedings in the case and all objections and submissions that were made in connection with the proposed settlement," (2) reviewed "materials [that] . . . included all written objections to the settlement," (3) "heard objections" at the settlement fairness hearing, and (4) "was aware of all the issues that appellants now argue should have been considered when determining the settlement's fairness," we held that "the district court did not abuse its discretion by approving the settlement." Id. at 1268-69.

Here, as in In re Integra II, the district court reviewed and considered all of the submissions and materials. See Hearing Transcript, ROA, Vol. III, at 939 (explaining that the "reasons stated, arguments advanced and authorities already cited" have been "carefully read and considered by the court, and its most competent and able staff"); Dist. Ct. Order, ROA, Vol. III, at 1004 ("I have reviewed carefully the Stipulation, Nacchio and Woodruff's objections, Qwest's

reply to the objections of Nacchio and Woodruff, and the applicable law.").[4]

Here, as in In re Integra II, the district court entertained objections at a fairness

hearing.  As Appellee Qwest notes, "[c]ounsel for both Nacchio and Woodruff

attended the hearing, and counsel for Nacchio presented argument on behalf of

both of them." Appellee Qwest's Br. at 21; see Hearing Transcript, ROA, Vol. III,

at 934-35, 952-58.  Here, as in In re Integra II, 354 F.3d at 1269, the district court

was "aware of all the issues that Non-Settling Defendants now argue should have

been considered when determining the settlement's fairness," particularly in light

of the parties' extensive briefing on those issues.

Given the district court's obligation to analyze the settlement and ensure its

fairness towards all parties involved—not just Non-Settling Defendants—the

district court's analysis of Non-Settling Defendants' objections in two-and-a-half

pages of a twelve-page opinion was reasonable.  See Linney v. Cellular Alaska

P'ship, 151 F.3d 1234, 1243 (9th Cir. 1998) (holding that the district court

appropriately "outlined . . . objections, gave his responses, and stated why he

believed the settlement to be fair, reasonable, and adequate in a 16-page Order

---

[4] The majority is incorrect that the district court never read or considered
Non-Settling Defendants' Supplemental Brief.  At the fairness hearing, which
occurred after Non-Settling Defendants submitted their Supplemental Brief, the
district court instructed the parties that their "papers" had been "carefully read
and considered by the court, and its most competent and able staff."  Hearing
Transcript, ROA, Vol. III, at 939.  To be fair, the district court did not say, "I
have read your Supplemental Brief," but we usually do not require a district court
to provide such an explicit acknowledgment of a party's submission to the court.

and a 7-page Judgment").  Even if the district court's adoption of Qwest's Reply Brief for its "reasons stated, arguments advanced, and authorities cited," Dist. Ct. Order, ROA, Vol. III, at 1004, was more cursory than we might prefer, the referenced Reply Brief nevertheless contained appropriate legal and factual support for the district court's conclusions and analysis, and we can adequately discern the basis for the district court's decision.  See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 437 (1968) ("If, indeed, the record contained adequate facts to support the decision of the trial court to approve the proposed compromises, a reviewing court would be properly reluctant to attack that action solely because the court failed adequately to set forth its reasons or the evidence on which they were based.").

Moreover, the record on appeal contains all of the briefs that the parties submitted to the district court, as well as the transcript of the hearing in front of the district court and the decision of the district court—not to mention a fresh set of briefs totaling almost 200 pages.  Given the detail of this record and the district court's specific adoption of the reasoning and authorities cited in Qwest's Reply Brief as its ruling, we have very little difficultly in framing the issues at hand or in discerning the district court's rulings on those issues.  Vacating and remanding, simply to force the district court to combine all of its reasoning and support into one document, would create needless delay in a case that is already over six years old.

- 11 -

The majority relies almost entirely on the Eleventh Circuit's decision in AAL High Yield Bond Fund v. Deloitte & Touche LLP, 361 F.3d 1305, 1312 (11th Cir 2004), in which the court vacated a bar order in a securities litigation settlement and remanded for "the assistance of the district court's full consideration and discussion of all of the relevant facts of the instant case and a full discussion of the relevant persuasive authorities and the underlying reasons and policies justifying whatever order the district court ultimately approves." Admittedly, AAL High Yield Bond Fund provides support for vacating and remanding to the district court. However, the district court in AAL High Yield Bond Fund appears to have undertaken less analysis than the district court did here, and the issues in the instant case are appropriately framed and defined for appeal. Moreover, as explained supra, our own decision in In re Integra II is controlling here and strongly favors our accepting the district court's ruling for review without requiring further explication, the Eleventh Circuit's decision notwithstanding.